MICHIGAN ASSOCIATION OF CHIROPRACTORS v BLUE CROSS
BLUE SHIELD OF MICHIGAN

Docket No. 304736. Submitted February 12, 2013, at Lansing. Decided
    April 18, 2013, at 9:10 a.m. Leave to appeal sought.
    The Michigan Association of Chiropractors (MAC) and Toby A.
      Mitchell, D.C., brought an action in the Ingham Circuit Court
      against Blue Cross Blue Shield of Michigan (BCBSM), alleging
      that BCBSM, a nonprofit health care corporation that insures
      prepaid health care for members of the general public, breached
      contracts with MAC members who contracted with BCBSM to
      provide chiropractic services (provider agreements) and a 1999
      settlement agreement between MAC's predecessor organizations
      and BCBSM to resolve disputes regarding the provider agree-
      ments, and also violated state law. Plaintiffs alleged that BCBSM
      had a practice of not paying chiropractic providers for covered
      chiropractic services, while it pays other nonchiropractic providers
      for providing the same services. Plaintiffs also alleged that MAC
      members who are not participating providers have suffered dam-
      ages as a result of being discouraged from becoming BCBSM
      providers because of the policies. Count I of the complaint alleged
      that BCBSM had met often with MAC in a "sham" attempt to
      implement proper reimbursement policies and sought compensa-
      tory and exemplary damages for the intentional representations
      and promises of performance that BCBSM allegedly made with no
      intention of following through, to the detriment of the relation-
      ships between MAC members and their patients. Count I did not,
      however, seek declaratory relief. Count II alleged that BCBSM
      breached the 1999 settlement agreement by unilaterally requiring
      traction to be linked to a chiropractic adjustment and by ceasing to
      use the charging code for emergency services. Count II sought a
      declaratory judgment that BCBSM breached the 1999 settlement
      agreement as well as damages, fees, and costs. Count III alleged
      that BCBSM's refusal to reimburse practitioners "for physical
      medicine modalities it recognizes are within the scope of chiro-
      practic" constituted a breach of certain provider agreements that
      the 1999 settlement agreement allegedly does not apply to. Count
      III sought declaratory relief and an award of damages. Plaintiff
      moved to certify a class comprising of "all similarly situated

chiropractors who have or had Traditional Services or PPO Product Agreements with Blue Cross, are members of the MAC and have been denied lawful reimbursement." BCBSM denied that it breached the 1999 settlement agreement and opposed the motion to certify the class. The court, Paula J. M. Manderfield, J., determined that the requirements of MCR 3.501(A)(1) for class certification were satisfied and certified the class. BCBSM sought leave to appeal. The Court of Appeals granted leave to appeal. *Chiropractors Ass'n of MI v Blue Cross/Blue Shield of MI*, unpublished order of the Court of Appeals, entered February 22, 2012 (Docket No. 304736).

The Court of Appeals *held*:

1. An action must meet all the requirements of MCR 3.501(A)(1) to proceed as a class action.

2. The initial inquiry in this case—whether BCBSM's conduct was contrary to law or contractual terms–does not require the examination of individual cases.

3. For count II, and for count I if plaintiffs are able to amend their complaint on remand to seek declaratory relief in count I, the proposed class definition does not pose an obstacle to certification for any declaratory relief plaintiffs seek. If BCBSM had a duty to negotiate in good faith but in fact was merely intentionally causing delay, and if MAC and its members waited for these negotiations to conclude despite an exodus of patients to doctors offering more services that were covered, the legal issues and factual matters other than damages would apply class-wide. Likewise, the question whether BCBSM unilaterally implemented across-the-board policies that breached the settlement agreement involves common legal and factual questions.

4. There is no overarching legal question to be addressed with regard to count III because, in each case, whether reimbursement was wrongfully denied hinges on whether "covered services" were provided. Therefore, for count III, the proposed class definition is not supported by the record at this point because there is no evidence that count III does not require an examination of each certificate involved in every challenged reimbursement denial. The trial court erred by certifying the class with regard to count III because the commonality requirement for class certification was not met.

5. A problem does arise to the extent that plaintiffs seek compensatory and exemplary damages. Establishing that a patient left someone's practice because of BCBSM's delay requires an individual examination of facts. Whether a practitioner is entitled to compensatory damages requires an examination of claims

submitted and denied, or services provided and not reimbursed by BCBSM. Like with count III, this would require an examination of each patient's certificate to see if the denied claim was for a covered service.

6. There is no need to decertify the class on the basis of the definition of the class. However, the record does not support the proposed class definition with regard to count III. Plaintiffs' claims for declaratory relief are to be bifurcated from those seeking retrospective compensatory damages. The class definition is valid for the declaratory relief plaintiffs seek in count II, and for count I if plaintiffs are able to amend their complaint on remand to seek declaratory relief in that count.

7. The trial court erred by holding that plaintiffs satisfied the numerosity requirement for class certification after only considering the evidence of the number of chiropractors holding contracts with BCBSM. Reversal is not warranted on this basis because, as a result of the Court of Appeals limiting of plaintiffs' remedies to declaratory relief, the need to estimate the number of chiropractors suffering actual financial harm was deemphasized. On remand, the trial court must require plaintiffs to provide an actual estimate of the number of chiropractors that meet the third element of the class definition—they have been wrongfully denied reimbursement—before plaintiffs may proceed with the damages portion of their suit.

8. The counts involving misrepresentation during negotiations (count I) and unilateral changes in reimbursement codes (count II) involve common questions.

9. Count III is not suitable for class certification because of the individualized inquiry that is required for each class member.

10. To the extent that the trial court's order failed to recognize the individual inquiry needed for resolution of count III, the court erred by certifying the class for the entire complaint.

11. The adequacy element is sufficiently met for counts I and II, but not for count III. Dr. Mitchell is not an adequate representative for count III because he failed to establish that he exhausted his contractual remedies.

12. Plaintiffs failed to establish that their claims for compensatory relief satisfy the class action requirements set out in MCR 3.501(A)(1). The trial court should have bifurcated the declaratory claims for count II and certified the class for that count. If plaintiffs fail to seek to amend their complaint on remand, count I should be decertified in its entirety. If plaintiffs are able to amend their complaint on remand to seek declaratory relief in count I, the

trial court should bifurcate the declaratory relief claims and also certify the class for count I. Because of the unsuitability of the compensatory relief sought and the failure of plaintiffs to establish commonality, typically, and adequacy for count III, the trial court abused its discretion by allowing certification of the class for plaintiffs' entire complaint.

Affirmed in part, reversed in part, and remanded.

1. ACTIONS — CLASS ACTIONS — MOTIONS TO CERTIFY CLASS ACTIONS — PREREQUISITES FOR CLASS CERTIFICATION — BURDEN OF PROOF.

The burden of establishing that the requirements for a certifiable class are satisfied is on the party seeking certification; all the requirements for certification stated in MCR 3.501(A)(1) must be met before an action may proceed as a class action; the requirements pertain to numerosity (the class is so numerous that joinder of all members is impracticable), commonality (there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members), typicality (the claims or defenses of the representative parties are typical of the claims or defenses of the class), adequacy (the representative parties will fairly and adequately assert and protect the interests of the class), and superiority (the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice); a court may not simply accept as true a party's bare statement that a prerequisite has been met without making an independent determination that basic facts and law are stated adequately to support that prerequisite.

2. ACTIONS — CLASS ACTIONS — NUMEROSITY OF PLAINTIFFS.

There is no particular minimum number of members necessary to meet the numerosity requirement for certifying an action as a class action; the exact number of members need not be known as long as general knowledge and common sense indicate that the class is large; the plaintiff must adequately define the class so potential members can be identified and must present some evidence of the number of class members or otherwise establish by reasonable estimate the number of class members because the court cannot determine if joinder of the class members would be impracticable unless it knows the approximate number of members (MCR 3.501[A][1]).

3. ACTIONS — CLASS ACTIONS.

A person generally may not pursue a cause of action in a class that the person could not pursue individually.

*Miller, Canfield, Paddock and Stone, P.L.C.* (by *Richard A. Gaffin* and *Kenneth T. Brooks*), for plaintiffs.

*Dickinson Wright PLLC* (by *Joseph A. Fink*, *Jeffery V. Stuckey*, and *Scott R. Knapp*) and *Nicole M. Wotlinski* for defendant.

Before: FITZGERALD, P.J., and METER and M. J. KELLY, JJ.

FITZGERALD, P.J. Defendant, Blue Cross Blue Shield of Michigan (BCBSM), appeals by leave granted the trial court's order granting the motion of plaintiffs, Michigan Association of Chiropractors (MAC), also known as the Chiropractic Association of Michigan, and Toby A. Mitchell, D.C., for class certification. This case was submitted and argued with *Mich Ass'n of Chiropractors v Blue Care Network of Mich, Inc*, 300 Mich App 577; ___ NW2d ___ (2013). Defendant here asserts that plaintiffs' proposed class was improperly certified because the class definition is fundamentally flawed and because plaintiffs have not satisfied the requirements of MCR 3.501(A)(1). For the reasons given hereinafter, we affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

The complaint in this case alleges that MAC is a voluntary trade association representing the interests of approximately 1,400 chiropractic doctors in Michigan. Dr. Mitchell is a licensed chiropractic physician, a member of MAC, and an affiliated provider with BCBSM. BCBSM is a nonprofit health care corporation that insures prepaid health care for members of the general public. Seventy percent of MAC members are members of BCBSM's chiropractic provider network; in

addition, some MAC members were BCBSM providers in the past, but are not currently providers, and some have never been providers.

MAC members who are providers contract with BCBSM to provide chiropractic services under Practitioner Traditional Participation Agreements and PPO TRUST Network Practitioner Affiliation Agreements (TRUST agreements) (together, "the provider agreements"). The terms of the provider agreements are the same for all providers. Additionally, in 1999, MAC's predecessor organizations and BCBSM entered into a settlement agreement resolving their disputes over the "administration and implementation" of the provider agreements. At issue in this case is the administration and interpretation of the 1999 settlement agreement in conjunction with the provider agreements.

## II. THE COMPLAINT AND PROPOSED CLASS

In their amended complaint, plaintiffs alleged that BCBSM breached the provider agreements and the 1999 settlement agreement and violated Michigan law. Plaintiffs claimed that BCBSM has a practice of not paying chiropractic providers for covered chiropractic services, while it pays other nonchiropractic providers for providing the same services. Plaintiffs also alleged that MAC members who are not participating providers have suffered damages because they have been discouraged from becoming BCBSM providers as a result of these policies. The complaint stated three counts. Count I alleged that BCBSM had met often with MAC in a sham attempt to implement "proper reimbursement policies," and sought

> compensatory and exemplary damages for the intentional manner in which Blue Cross and Blue Shield made representations and promises of performance to Plaintiffs, with

no intention of following through, to the detriment of Plaintiffs' patient relationships, and instead simply fore-stalled implementation of any appropriate changes until Plaintiffs should file this lawsuit.

Count I did not, however, seek declaratory relief. Count II alleged two ways BCBSM breached the 1999 settlement agreement—by unilaterally requiring traction to be linked to a chiropractic adjustment and by ceasing to use the charging CPT[1] code for emergency services—and sought a declaratory judgment that BCBSM breached the 1999 settlement agreement as well as damages, fees, and costs. Count III alleged that BCBSM's refusal to reimburse practitioners "for physical medicine modali-ties it recognizes are within the scope of chiropractic" constituted a breach of the TRUST agreements (plain-tiffs asserted that the 1999 settlement agreement does not apply to the TRUST agreements) and sought de-claratory relief and damages.

Plaintiffs moved to certify a class comprised of "all similarly situated chiropractors who have or had Tradi-tional Services or PPO Product Agreements with Blue Cross, are members of the MAC and have been denied lawful reimbursement." In support of the motion, plain-tiffs offered the affidavit of Kristine Dowell, director of MAC, describing the history of the relationship between MAC and BCBSM, the history of negotiations, and her knowledge of defendant's practices that have affected chiropractors. Plaintiffs also provided Dr. Toby Mitchell's affidavit attesting to the harms that he suffered. He averred that despite his provider agreements, BCBSM "continually refuses to reimburse me for services that those agreements require it to reimburse for" and, be-

---

[1] CPT is an acronym for Current Procedural Terminology, which is the American Medical Association's "official coding resource for procedural codes, rules and guidelines."

cause BCBSM does reimburse other providers, such as osteopaths, for those services, Dr. Mitchell would "often lose patients because they do not wish to pay for their treatment out of pocket . . . ." He stated that he sometimes did not submit invoices that he knew would be rejected, and he identified CPT codes for which reimbursement was not allowed, eliminated over time, or provided on a limited basis. Dr. Mitchell asserted that he lost patients and suffered financial loss as a result of BCBSM's policies.

Defendant asserted that the 1999 settlement agreement controls which services are reimbursed and that it had not breached that agreement. The provider agreements limit reimbursement to services identified as "covered" in an insured's certificate, and none of those certificates expands covered chiropractic services to everything a chiropractor is licensed to perform. Regarding class certification, defendant argued that the class definition was too broad, that plaintiffs failed to identify any actual damages that had been incurred as a result of the alleged breaches, that plaintiffs failed to provide a method to identify class members, that the court would have to conduct exhaustive evidentiary hearings to determine whether individual chiropractors should be included in the class, and that Dr. Mitchell was not representative of any class because his claims were time-barred. Notably, defendant did not dispute that class litigation was suitable for the prospective or declaratory aspects of the claims.

The trial court disagreed with defendant and, in a written opinion, held that the requirements of MCR 3.501(A)(1) were satisfied. Thereafter, it certified the class. Defendant sought leave to appeal, which we granted, limited to the issues raised in the application.[2]

---

[2] *Chiropractors Ass'n of MI v Blue Cross/Blue Shield of MI*, unpublished order of the Court of Appeals, entered February 22, 2012 (Docket No. 304736).

III. STANDARD OF REVIEW

Interpretation of MCR 3.501(A) presents a question of law that we review de novo. *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009). The analysis a court must undertake regarding class certification may involve making both factual findings and discretionary decisions. *Id*. at 495-496. We review the trial court's factual findings for clear error and the decisions that are within the trial court's discretion for an abuse of discretion. *Id*. The burden of establishing that the requirements for a certifiable class are satisfied is on the party seeking to maintain the certification. *Tinman v Blue Cross & Blue Shield of Mich*, 264 Mich App 546, 562; 692 NW2d 58 (2004); see also *Henry*, 484 Mich at 509.

IV. MCR 3.501(A)(1)

Certification of a class is controlled by court rule. Under MCR 3.501(A)(1), one or more members of a purported class may file suit on behalf of all members only if:

(a) the class is so numerous that joinder of all members is impracticable;

(b) there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members;

(c) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(d) the representative parties will fairly and adequately assert and protect the interests of the class; and

(e) the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

These prerequisites are often referred to as numerosity, commonality, typicality, adequacy, and superiority. *Henry*, 484 Mich at 488. "[T]he action must meet *all* the requirements in MCR 3.501(A)(1); a case cannot proceed as a class action when it satisfies only some, or even most, of these factors." *A&M Supply Co v Microsoft Corp*, 252 Mich App 580, 597; 654 NW2d 572 (2002).

Although the federal " 'rigorous analysis' " approach does not apply under our state law, "a certifying court may not simply 'rubber stamp' a party's allegations that the class certification prerequisites are met." *Henry*, 484 Mich at 502. The court's decision to certify may be based on the pleadings alone only if the averments therein satisfy the party's burden of proving that the requirements of MCR 3.501 are met, "such as in cases where the facts necessary to support this finding are uncontested or admitted by the opposing party." *Henry*, 484 Mich at 502-503. The court "may not simply accept as true a party's bare statement that a prerequisite is met" without making an independent determination that basic facts and law are stated adequately to support that prerequisite. *Id.* at 505. "If the pleadings are not sufficient, the court must look to additional information beyond the pleadings to determine whether class certification is proper." *Id.* at 503. The court should analyze asserted facts, claims, defenses, and relevant law, but "should avoid making determinations on the merits of the underlying claims at the class certification stage of the proceedings." *Id.* at 488; see also *id.* at 504.

Precedential caselaw on the subject of certification is thin in Michigan. *Henry*, the lead case in Michigan on class certification, involved allegations that the defendant, Dow Chemical Company, had negligently released

dioxin into the Tittabawassee River. The plaintiffs sought certification of a class of "persons owning real property within the 100-year flood plain of the Tittabawassee River on February 1, 2002," estimated by the plaintiffs to consist of approximately 2,000 persons. *Id.* at 491. The trial court held a two-day hearing in which it reviewed numerous scientific studies, affidavits from experts, and state-agency-provided information from both parties. The Michigan Supreme Court concluded that, although the trial court's analyses of the prerequisites identified in MCR 3.501(A)(1)(a), (b), and (e) were sufficient, the record was insufficient to determine if the trial court had made a valid, independent determination regarding the typicality and adequacy prerequisites of MCR 3.501(A)(1)(c) and (d). *Henry,* 484 Mich at 506. Accordingly, the case was remanded for clarification of the trial court's analysis of those two prerequisites. *Id.* at 509. Thus, although *Henry* sets out the details of the proper test under the court rule, it provides little guidance in applying the prerequisites.

### V. CLASS DEFINITION

Defendant first argues that the proposed class is unsuitable for certification because the class definition requires a determination of the merits of each individual claimant's case. That is, defendant asserts first that the only way to determine who is a class member is to identify chiropractors who are current MAC members, have signed BCBSM participation agreements, and were denied lawful reimbursement by BCBSM and second that this last requirement mandates an individualized factual inquiry, something that is not proper for class certification. Defendant relies on *Tinman,* 264 Mich App 546, arguing that the class sought here is

analogous to the class this Court decertified in that case. The *Tinman* class was defined as:

"[A]ll persons who, during the period from June 9, 1998, through the present, were, are and will be entitled to receive health care benefits from Blue Cross & Blue Shield of Michigan (BCBSM) for emergency health care services, but were, or will be, denied health care benefits for emergency health care services by BCBSM based on the final diagnosis of their medical condition (excluding any officers or directors of BCBSM, and their family members)." [*Id.* at 552-553.]

The trial court in *Tinman* had found that the predominant issue was whether BCBSM's " 'systematic practice' " of denial on the basis of the final diagnosis of a medical condition violated statutory law and the certificates it issued and that this was a common question of fact and law meeting the requirements of MCR 3.501(A)(1)(b). *Tinman*, 264 Mich App at 563. This Court disagreed, concluding:

Rather than being subject to generalized proofs, the evidence of the type of emergency health services and medically necessary services provided, the medical conditions involved and whether they occurred suddenly, the signs and symptoms that manifested those medical conditions, and whether payment was denied for services up to the point of stabilization will all vary from claimant to claimant. Thus, it is evident that to determine defendant's liability, highly individualized inquiries regarding the circumstances relevant to each claim clearly predominate over the more broadly stated common question in this case. [*Id.* at 564-565.]

Defendant asserts that what plaintiffs seek here is no different from what was sought in *Tinman* because each request for reimbursement must be for medically necessary services, i.e., the entitlement to reimbursement depends on individual assessments. However,

rather than viewing defendant's conduct as resulting from a series of individual decisions, defendant's conduct can be viewed as showing that it adhered to specific policies that affected many providers in the same way. The initial inquiry—whether defendant's conduct was contrary to law or contractual terms—does not require the examination of individual cases.

An examination of each count provides a clearer picture of the issue. In count I, plaintiffs alleged that, after the 1999 settlement agreement was signed, defendant engaged in a course of fraudulent conduct in the "free and open" meetings between MAC and BCBSM at which they discussed "CPT codes that would be payable." Defendant allegedly agreed with MAC about which codes were within the scope of chiropractic, and "made numerous representations about essentially providing reimbursement for the additional services identified," but had no intention of actually allowing that level of reimbursement. Instead, it intentionally caused plaintiffs to rely on defendant's apparent good faith and to forgo legal action for as long as it could delay.

The allegations of count II are similar. In this count, plaintiffs alleged that defendant breached the 1999 settlement agreement by unilaterally implementing policies to the detriment of its chiropractic physicians who provide care pursuant to Traditional Services Agreements. Specifically, contrary to the terms of the settlement agreement, defendant allegedly stopped paying for mechanical traction unless it was performed in conjunction with an adjustment, and defendant stopped using CPT code 99058, which took away "the only means for chiropractic physicians to be paid additional office visits for established patients when they presented with an additional condition that required evaluation and management services."

Count III applies only to providers with whom defendant has TRUST agreements. In this count, plaintiffs alleged that defendant refused to reimburse those providers for all but one of the CPT codes that represent services chiropractors are licensed to perform and that this refusal violated the TRUST agreements.

We conclude that for count II, and for count I if plaintiffs are able to amend their complaint on remand to seek declaratory relief in that count, the proposed class definition does not pose an obstacle to certification for any declaratory relief plaintiffs seek. If defendant had a duty to negotiate in good faith but in fact was merely intentionally causing delay, and if MAC and its members waited for those negotiations to conclude despite an exodus of patients to doctors offering more services that were covered, the legal issues (such as whether defendant had such a duty) and factual matters other than damages (such as when MAC would have taken action) would apply class-wide. Likewise, the question whether defendant unilaterally implemented across-the-board policies that breached the 1999 settlement agreement involves common legal and factual questions. It does not take an assessment of each individual in the class to show that elimination of the only way to get reimbursement for a procedure plaintiffs normally performed would cause injury, either in the form of lost income or in the form of lost patients.

Count III, however, presents a different situation from the first two counts. While the 1999 settlement agreement precludes reimbursement for several of the various services chiropractors can perform, plaintiffs asserted that TRUST providers are not covered by that agreement (and thus are not limited by it) and therefore should get reimbursement for any service they are licensed to provide. Plaintiffs argue that, for example,

spinal decompression is within the scope of chiroprac-
tic, but defendant refuses to reimburse chiropractors
for this service while at the same time reimbursing
other practitioners for that service. However, regardless
of the scope of the 1999 settlement agreement, both
kinds of provider agreements limit reimbursement to
"covered services," and both contracts define "covered
services" as meeting three requirements: "(i) identified
as payable in Certificate(s), (ii) medically necessary as
defined in such Certificates, and (iii) ordered and per-
formed by a PRACTITIONER licensed to order and
perform such services." The third element is the only
one of the three that might be established by common
proofs. Whether the other two are met (and thus,
whether the services for which reimbursement is being
sought were, in fact, "covered services") depends on
whether the treatment is "medically necessary" and
"identified as payable." The answer to both of these
questions can only be ascertained by examining the
certificate[3] held by the individual member who sought
treatment. Reference to the statutory definition of
chiropractic, MCL 333.16401(1)(e), or any other identi-
fication of what is within the scope of chiropractic
cannot serve to expand the limits of a certificate.

The present record indicates that there could be
hundreds of different certificates, and there is no evi-
dence whether the terms of these are identical, some-
what similar, or completely different. Unlike with

---

[3] "Certificate" is defined by the provider agreements as

benefit plan descriptions under the sponsorship of BCBSM, or
certificates and riders issued by BCBSM, or under its sponsorship,
or Member's coverage documents or benefits provided pursuant to
contracts issued by other Blue Cross or Blue Shield (BCBS) Plans,
administered through reciprocity of benefit agreements or other
Inter-Plan Arrangements such as BlueCard.

counts I and II, there is no overarching legal question to be addressed; whether reimbursement was wrongfully denied hinges on whether "covered services" were provided. Thus, for count III, the proposed class definition is not supported by the record at this point because there is no evidence that count III does not require an examination of each certificate involved in every challenged reimbursement denial. Further discovery could reveal how similar the certificates are and whether the required elements of a certifiable class can be adequately supported. Without more, however, certifying the class with regard to this count was erroneous because of the apparent need for individual proofs, that is, as discussed in part VII of this opinion, for this count, the commonality requirement is not met.

Similarly, to the extent plaintiffs seek compensatory and exemplary damages, the class definition expressly limiting the class to plaintiffs who have suffered compensable damages is problematic. As defendant points out, establishing that a patient left someone's practice because of BCBSM's delay requires an individual examination of facts. Likewise, whether a practitioner is entitled to compensatory damages requires an examination of claims submitted and denied, or services provided and not reimbursed by defendant. Like count III, this would require an examination of each patient's certificate to see if the denied claim was a "covered service" in the first place.

Accordingly, we decline to decertify the class on the basis of the definition of the class. For counts I and II, unlike the problems with the definition used in *Tinman*, the problems with the definition used in this case arise more from the remedies sought by each count and by difficulties in satisfying the requirements of MCR 3.501(A)(1), than from the definition itself. Count III,

however, requires individual fact-finding for each potential class member, and we conclude that the record does not support the proposed class definition with regard to this count. We hold that plaintiffs' claims for declaratory relief should be bifurcated from those seeking retrospective compensatory damages and that the class definition is valid for the declaratory relief plaintiffs seek for count II, and for count I if plaintiffs are able to amend their complaint on remand to seek declaratory relief in that count. MCR 3.501(B)(3)(d)(i).

## VI. NUMEROSITY

Defendant next argues that the numerosity requirement of MCR 3.501(A)(1)(a) has not been met because there are no proofs in the record regarding how many chiropractic physicians might be in the class.[4] We agree that the trial court erred by holding that plaintiffs satisfied the numerosity requirement after it considered only the evidence of the number of chiropractors holding contracts with defendant. Moreover, plaintiffs provide in their brief no estimate of the size of the class.

In *Zine v Chrysler Corp*, 236 Mich App 261, 287-288; 600 NW2d 384 (1999), we stated:

There is no particular minimum number of members necessary to meet the numerosity requirement, and the exact number of members need not be known as long as general knowledge and common sense indicate that the class is large. Because the court cannot determine if joinder of the class members would be impracticable unless it knows the approximate number of members, *the plaintiff*

[4] Although numerosity was not an issue raised in the statement of questions in defendant's application, we have authority to consider such issues, and we choose to do so because it is fully briefed and is an integral part of the class-certification requirements. See MCR 7.216(A); *United Parcel Serv, Inc v Bureau of Safety & Regulation*, 277 Mich App 192, 204; 745 NW2d 125 (2007).

> *must adequately define the class so potential members can*
> *be identified and must present some evidence of the number*
> *of class members or otherwise establish by reasonable*
> *estimate the number of class members.* [Citations omitted;
> emphasis added.]

In *Zine*, the plaintiffs sought to certify a proposed class of over 522,600 persons who had purchased defendant's vehicles and had been misled by information distributed to the purchasers concerning their rights under Michigan law. *Id.* at 267. The trial court denied the motion to certify the class, and this Court affirmed. The Court noted that none of the plaintiffs had identified a specific number of class members and that the plaintiffs had only "indicated that the class potentially included all 522,658 purchasers of new Chrysler products from February 1, 1990, onward." *Id.* at 288.

> However, class members must have suffered actual injury to have standing to sue, so plaintiffs must show that there is a sizable number of new car buyers who had seriously defective vehicles and lost their right to recovery under Michigan's lemon law because they were misled by the documents supplied by Chrysler. Neither [of the plaintiffs] indicated even approximately how many people might come within this group, nor did they indicate a basis for reasonably estimating the size of the group. Therefore, both [plaintiffs] failed to show that the proposed class is so numerous that joinder of all members is impracticable. [*Id.* at 288-289 (citation omitted).]

The present case is factually analogous. Each class member must meet the class definition's three features: be a MAC member, be a signatory to a BCBSM provider agreement, and have been wrongfully denied reimbursement. There is no allegation that defendant has wrongfully denied claims of *all* MAC chiropractors and, like the plaintiffs in *Zine*, plaintiffs do not "indicate[] even approximately how many people might come

within this group . . . ." *Id*. at 289. Plaintiffs' motion brief proposed that the number of chiropractic physicians listed in defendant's provider directory (2,589) was "likely the minimum number of class members," that is, there might be even more because that number did not include persons who had been, but were no longer, providers. The trial court looked only at that number and accepted it without considering the other two requirements. This was clear error. Plaintiffs' class definition sets three requirements: the first two alone limit the number to at most 1,400 to 1,500—the class cannot be any larger than the number of MAC members that have or had provider contracts—and there is no evidence of the number that meet the third limitation, i.e., those who have been wrongfully denied reimbursement.

However, after reviewing the record, we conclude that reversal on the basis of this issue is not required. By limiting plaintiffs' remedies to declaratory relief, we deemphasize the need to estimate the number of chiropractors suffering actual financial harm. Finally, on remand, the trial court must require plaintiffs to provide an actual estimate of the number of chiropractors that meet the third element of the class definition before plaintiffs may proceed with the damages portion of their suit.

### VII. COMMONALITY

Defendant next argues that there is no generalized proof that can establish injury on a class-wide basis. For example, even if the representative plaintiff can show that he timely submitted a "clean claim" for a covered service and that he was denied relief through the contractual dispute-resolution process, that would not show that BCBSM had a policy of doing so or that any other class member was injured in the same way. Again,

we conclude that bifurcating the declaratory remedies sought from the damages remedies sought resolves the conflict inherent in the proposed definition.

Under MCR 3.501(A)(1)(b), a prerequisite for a certifiable class action suit is that "there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members[.]" As we have already discussed, the counts involving misrepresentation during negotiations (count I) and unilateral changes in reimbursable codes (count II) involve common questions. This Court in *Tinman* explored the issue of common questions:

> The common question factor is concerned with whether there is a common issue the resolution of which will advance the litigation. . . . It requires that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.
>
> . . . It is not every common question that will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. A plaintiff seeking class-action certification must be able to demonstrate that all members of the class had a common injury that could be demonstrated with generalized proof, rather than evidence unique to each class member . . . . [T]he question is . . . whether the common issues [that] determine liability predominate. [*Tinman*, 264 Mich App at 563-564 (citations and quotation marks omitted; alterations by *Tinman*).]

Like the trial court in this case, the trial court in *Tinman* did not separately address the propriety of certifying each count of the plaintiff's complaint, but determined that, as a whole, the plaintiff's suit merited class-action certification. This Court disagreed, concluding that the issues involved a "highly individualized inquiry . . . to determine whether de-

fendant engaged in a reasonable investigation based on the available information before denying a particular claim." *Id.* at 564.

Defendant argues that this case is analogous because whether a provider was wrongfully denied reimbursement depends on individualized inquiries into whether the treatment was medically necessary, whether a timely "clean claim" was submitted, and whether the provider was qualified to render the service. But if the issue is whether defendant has an across-the-board policy of refusing to reimburse chiropractors for covered services for which reimbursement is permitted by the agreements, then individual assessment for each claimant is not necessary at the class-certification stage, and the common issues predominate. Viewed in the broadest way, and taking the allegations of count II at face value, if defendant systematically breaches its provider agreements with chiropractors by refusing to reimburse as required by contract, then any chiropractor with a BCBSM provider agreement potentially has a claim. Individual questions only arise after a breach or misrepresentation has been established, at which point class members would need to prove their damages. Count I is similar where common answers exist regarding defendant's intent and plaintiffs' reliance. For both of these counts, as with the numerosity requirement, limiting the suit at this point to declaratory relief only forestalls the need for the individualized proofs that are required in determining monetary damages.

Count III, however, is simply an aggregate of individual breach of contract claims. The claims of class members

> must depend upon a common contention . . . . That common contention, moreover, must be of such a nature that it

is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

"What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." [*Wal-Mart Stores, Inc v Dukes*, 564 US ___, ___; 131 S Ct 2541, 2551; 180 L Ed 2d 374, 389-390 (2011), quoting Nagareda, *Class certification in the age of aggregate proof*, 84 NY U L R 97, 132 (2009).]

For this count, the answers sought relate to whether defendant breached its contracts by wrongfully denying reimbursement. But in each individual case, defendant's denial of reimbursement could be due to any number of factors, not the least of which is that coverage of chiropractic services may be limited by a patient's certificate, or may not be defined by the certificate as "medically necessary" at the frequency that plaintiffs would prefer. Defendant's stated reasons for denying reimbursement are not identified by plaintiffs, so it is unknown how many claims were refused because they were not timely, because the patient was not a subscriber, because the service was not covered at all, or because the frequency of the service exceeded what was covered. It would not be enough to show that claims for certain codes are routinely denied without some proof that no valid reason for denial exists. Therefore, count III, like the claim in *Tinman*, requires an individual inquiry for each purported class member. The trial court did not appear to consider the counts individually, and count III's differences from the other counts, and similarity to the claim in *Tinman*, make it unsuitable for class certification.

### VIII. TYPICALITY

Defendant argues that the typicality requirement is not met for the same reasons as the commonality requirement. Commonality and typicality "tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen Tel Co of the Southwest v Falcon*, 457 US 147, 157 n 13; 102 S Ct 2364; 72 L Ed 2d 740 (1982). However, they are separate elements. Typicality is established when "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" MCR 3.501(A)(1)(c). When the allegations merely make a bare statement that the requirement is met, the trial court must independently determine that the plaintiffs can sufficiently support "their allegations that their legal remedial theories were typical of those of the class." *Henry*, 484 Mich at 506 n 40.

When taken at face value, Dr. Mitchell's allegations that he suffered damages because defendant misrepresented its intent in negotiating a further expansion of covered services, that defendant systematically breached the 1999 settlement agreement by unilaterally changing or eliminating reimbursable services, and that defendant refused to reimburse him for covered services are in large part typical of the class. Here too, however, the same problem with count III arises: defendant may be consistently refusing reimbursement for improper reasons, but proof of that requires an examination of individual claims to ascertain the reasons for denial before it can be found that those reasons were merely a smokescreen to hide a pattern of discrimina-

tory conduct. If Dr. Mitchell regularly fails to timely submit his claims, for example, then his may not be typical of the claims being submitted by the class. Without knowing why Dr. Mitchell's claims are denied, it is impossible to know whether his claims might be typical of the class. To the extent the trial court's order failed to recognize the individual inquiry needed for resolution of count III, it erred by certifying the class for the entire complaint.

IX. ADEQUACY

Defendant argues that Dr. Mitchell cannot adequately represent the class because there was no evidence that he ever submitted a timely claim for a medically necessary, covered service that BCBSM then failed to reimburse.[5] As are the other requirements, the adequacy element is sufficiently met for counts I and II, but not for count III. Even if the class definition is legally sound, Dr. Mitchell is not an adequate representative for count III because he failed to establish that he exhausted his contractual remedies.

Generally, "[O]ne may not pursue a cause of action in a class that one could not pursue individually." *Cork v Applebee's of Mich, Inc*, 239 Mich App 311, 319; 608 NW2d 62 (2000). The provider agreements specify a three-step process for resolving reimbursement disputes. The provider must first send defendant a written complaint, and if defendant's explanation is unsatisfactory, then the parties meet in an informal conference. If

---

[5] Adequacy was not an issue raised in the statement of questions in defendant's application. However, we have authority to consider such issues, and we choose to do so because it is fully briefed and is an integral part of the class certification requirements. See MCR 7.216(A); *United Parcel Serv, Inc v Bureau of Safety & Regulation*, 277 Mich App 192, 204; 745 NW2d 125 (2007).

defendant's postconference proposed resolution is unsatisfactory, then the provider has a choice of seeking binding arbitration, review by the Department of Insurance and Financial Services, or judicial review. Here, there is no evidence that any class member has properly pursued, and received an unsatisfactory resolution to, a dispute.

In his affidavit, Mitchell stated:

> Despite [the provider agreements], and the 1999 Agreement, Blue Cross continually refuses to reimburse me for services that those agreements require it to reimburse for. In these instances, I am forced to bill my patients directly at a reduced rate. However, because Blue Cross will reimburse other providers, such as osteopaths, for these same services that I provide, I often lose patients because they do not wish to pay for their treatment out of pocket and will simply see a provider that will be covered by their insurance.

Whether the agreements require reimbursement is a legal question, not a fact. Mitchell does not provide facts supporting his conclusion that reimbursement was wrongfully denied, such as a claim denied as being untimely when it was not. Mitchell also identified CPT codes for which BCBSM limits or disallows reimbursement, but did not aver ever having been wrongfully denied reimbursement for those codes, nor did he point to any requirement in his provider agreement that those services be reimbursed or establish that "other providers" are reimbursed if they use those same codes. Finally, he identified services that he was capable of providing, "such as heat therapy and massage," but there is no evidence that those are covered services for which any health care provider is reimbursed. Thus, even if other potential class members have had claims wrongfully denied, Mitchell's affidavit does not provide factual support that he has had claims wrongfully denied.

X. CONCLUSION

Plaintiffs did not establish that their claims for compensatory relief satisfy the class requirements set out in MCR 3.501(A)(1). The trial court should have bifurcated the declaratory claims for count II and certified the class for that count. We note that plaintiffs have not at this point sought declaratory relief under count I. If plaintiffs fail to seek to amend their complaint, count I should be decertified in its entirety. If plaintiffs are able to amend their complaint on remand to seek declaratory relief in count I, the trial court should bifurcate the declaratory relief claims and also certify the class for that count. MCR 3.501(B)(3)(d)(i) states that a court may order that "the action be maintained as a class action limited to particular issues or forms of relief . . . ." While this is a discretionary rule, because of the unsuitability of the compensatory relief sought and the failure of plaintiffs to establish commonality, typicality, and adequacy for count III, the trial court abused its discretion by allowing certification of the class for plaintiffs' entire complaint.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

METER and M. J. KELLY, JJ., concurred with FITZGERALD, P.J.