# Court of Appeals, State of Michigan

## ORDER

JEROME DUBRULLE V GREAT LAKES WATER AUTHORITY; JOSEPH ACHTABOWSKI V GREAT LAKES WATER AUTHORITY; SHANNON ADAMS V GREAT LAKES WATER AUTHORITY; ANDREA ANDRZEJCZAK V GREAT LAKES WATER AUTHORITY; TIMOTHY BRADY V GREAT LAKES WATER AUTHORITY; THOMAS BEARSE V GREAT LAKES WATER AUTHORITY; DOUGLAS BULKA V GREAT LAKES WATER AUTHORITY; MARLETTE LANELL V GREAT LAKES WATER AUTHORITY; CHAS VERHEYDEN INC V GREAT LAKES WATER AUTHORITY

Docket Nos.   365363; 367529; 367530; 367531; 367532; 367534; 367535; 367536; 367538

LC Nos.      21-014057-NZ; 21-014161-CZ; 21-008745-CZ; 21-013480-CZ; 21-013987-CZ; 21-013979-CZ; 21-008465-CZ; 21-009030-CZ; 22-003449-CZ

Michael F. Gadola
Presiding Judge

Michelle M. Rick

Philip P. Mariani
Judges

The motion for reconsideration is GRANTED with respect to the Ven Johnson plaintiffs to allow an opportunity to file an amended complaint relative to defendants City of Grosse Pointe and City of Grosse Pointe Park.  This Court's opinion issued October 2, 2025, is hereby VACATED.  An amended opinion is attached.  The motion for reconsideration is DENIED in all other respects.

_____
Presiding Judge



A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

_____January 22, 2026_____
Date

_____
Chief Clerk

*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JEROME DUBRULLE, JENNIFER DUBRULLE, EDWARD KERFOOT, ELLEN KERFOOT, NICOLE NORRIS, MATTHEW NORRIS, CHADY HAURANI, MONA HAURANI, MARCY TAYLER, ABBY PAULSON, ANDREW HASTINGS, MARGUERITE KAISER, ROBERT KAISER, MOLLY MCCLANAGHAN, RYAN MORRIS, PATRICK SHANLEY, KELLY SHANLEY, RHONDA FENDERSON, SARAH FELDMAN, JOSHUA TUCKER, DANIELLE TUCKER, and JON MARKO,

      Plaintiffs-Appellants,

v

GREAT LAKES WATER AUTHORITY, CITY OF DETROIT, CITY OF GROSSE POINTE PARK, CITY OF GROSSE POINTE, CITY OF GROSSE POINTE FARMS, CITY OF GROSSE POINTE WOODS, CITY OF GROSSE POINTE SHORES, CITY OF HARPER WOODS, and SOUTHEAST MACOMB SANITARY DISTRICT,

      Defendants-Appellees.

UNPUBLISHED
January 22, 2026
10:29 AM

No. 365363
Wayne Circuit Court
LC No. 21-014057-NZ

JOSEPH ACHTABOWSKI, KEITH ADOLPH, WENDELINE ADOLPH, MOLLIE ALDRIDGE, AKEEM ALEBIOSU, ADEL ALI, ANGELA ALLEN, DONALD ALVIN, WANDA APPLETON, MARTHA AUSTIN, TEREDIA AUSTIN, DONNA BADON, SUE BAKER, CRAIG BALOW, ANNA BALOW, LIONEL BANKS, CAROL BANKS, DANNIE BANKS, RAYMOND BAUER, GAIL BEASLEY, DONNA BELL, MARIA BELTRAN, CHRISTINA BIBB, RITA BLONDELL, WENDY

BOOKER, WANDA BOWEN-DIXON, GABRIELLE BRADFORD, DONA BROWN, JIMMIE BROXTON, JUANA BROXTON, SHAWN BRYANT, WESLEY BURNS, PAMELA BURNS, ROY CALDWELL, CYNTHIA CALDWELL, CHESTE CALKA, DIANE CALLIWAY, LATISHA CALLOWAY, JACINDA CASON, ADRIANNE CHAMBLIS, BARBARA CHARLESTON, WILMA CLARK-PRICE, ASHA CLAY, KIM COUCHOT, BERNIDINE CRAGWAY, ERICA CROSSLAND, COREY DAVID, ALEXIS DAVIS, CRAIG DAVIS, JULIA DAVIS, WYANNA DAVIS, KATRINA DAVIS, DARLENE DONALDSON, JAMES DONOVAN, CHANRAE DOUGLAS, ERIC DRAKE, MARGARET DUTKA, THERESA ELLIOTT, INDIA ESKRIDGE, GERALD FARBER, KIMBERLY FARLEY, JUSTIN FENWICK, ATHENA FIZER, BRANDON FOSTER, WANDA FOX, ANTHONY FRAILS, CRYSTAL FRAILS, ALANA FRANKLIN, KAWANA FRENCH, ORLANDO GARCIA, SANDRA GARY, MICHELLE GEORGE, RITA GIBSON, GERALD GOODWIN, VALERIA GOODWIN, KEN GRAY, LORI GRAY, MARY GRAY, MARILYN GREEN, WILLA GREEN-SMITH, CLIMMET GRIMES, ELIZABETH GUIDO, DENISE HAMILTON, KAITLYN HARBOUR, JOWANNA HARDISON-WILLIAMS, LARRY HARPER, KEYANA HARPER, REAHNA HARVILLE, CHRISTANNA HEMMINGWAY, GERALD HOUSTON, MARY HOUSTON, GENEVA HUMPHREY, ROLAND HUMPHRIES, DIANE HUMPHRIES, SENOJ HUNTER, LANCE JACKSON, DONNA JEMISON, DEBORAH JENKINS, ROBERT JOHNSON, EDWARD JOHNSON, ANNETTE JOHNSON, CLYDE JONES, ESTHER JONES, JANE KAMINSKI, ANDREW KEISWETTER, BRIDGET KINARD, THERESA KNOTT, JEFF KURCZYNSKI, CHERYL LABON, LISA LANE, MADISON LANE, DESERAI LAWSON, AUGUSTINE LEWIS, RHONDA LEWIS WILEY, GENEVA LOCKETT, SHIRLEY LOCKETT, JERRY LOPEZ, RACHELLE LOYD, FRED LUCAS, DEVAUGHN LYNCH, GLADYNE LYNCH, DAWN MARTIN, CARMEN MAURY,

JUDITH MCCLINCHEY, HARRY MCCLURE, ALANDA MCLAUGHLIN, BARBARA MCMULLEN, BRENDA MCNEARY, CARLYN MILES, JACQUELINE MILLER, GERALDINE MILTON, ROBERT MOORE, ERIK MOTSCHALL, ELGIN MURPHY, LASHONNA MURPHY, ROBERT NEDWICKI, JERRY NEHR, GREGORY NEWELL, LACHONDA NEWELL, BERTHA NEWSOME, PATRICIA NOCELLA, AMY OTTERSEN, GREG PAPASTERGION, DEWAYNE PARKER, KRYSTAL PARKER, EARL PARKER, JR., MARY PARKS, EUGUENE PAYNE, JR., JERRY PEOPLES, BEVERLY PEOPLES, JEROME PETTIS, SYLVIA PETTWAY, KAREN POPE, BERNADETTE RAYFORD, LEE REED-PRATT, CHRISTIE REEVES, TERRANCE RHODES, MARCIA RICE, JAMES RICHERT, ROBERTA RILEY JONES, SHANETTA ROBERTS, JOYCE ROBINSON, LORETTA RODGERS, RICHARD RYKALA, FREDERICK RYKALA, LINDA SANDERS, MARGERY SHAW, KAREN SHAW, GWENDOLYN SIMMONS, ROBERT SISLER, THARSI SIVARAJAH, DOROTHY SMITH, DEBRA SNIPES, ILYA SNYDER, ERIN SPENCER, GEORGE STANTON, MARQUITTA STANTON, ROSCOE STEVENSON, KATHLEEN STEVENSON, TAIRA STEVENSON, DAVID SUTTNER, TERRY SWAFFORD, LANEIL SYKES, DEMARCO TAYLOR, KEIP TAYLOR, LATRICE TAYLOR, ELOREEN THAME-SMOTHERS, RHONDA THEUS, DEBORAH THOMAS, DEMETRIUS THOMAS, COURTLAND TOLBERT, ROXANNE TURNER, THOMAS VALASTEK, KIERRA WALKER, JOANNE WARWICK, JERLANDA WASHINGTON, STEVEN WASKO, DEANNA WATTS, EUGENE WHITE, CHARLES WHITE, GERALDINE WHITE-SIDE, RYAN WILDE, EMERY WILLIAMS, CHARLES WILLIAMS, JOSEPHINE WILLIAMS, MARY WINDHAM, KATREENA YATES, KEIARA YOUNGER, MARY LYNN ZAREMBSKI-COLE, KENNETH GRAY, LORI TAYLOR GRAY, BRANDY EDMONDS, WILLIAM FRANKLIN, FLORENCE JOHNSON FRANKLIN, SHAWN HENDRICKS,

REGINA STERRETT-HENDRICKS, THERESA
YANCY, LEDTHA WYNN, KIMBERLY BROWN,
ASHLEY FOX, and DEBORAH GIBSON,

Plaintiffs-Appellants,

and

HULYA EROL-GARVETT,

Plaintiff,

v

GREAT LAKES WATER AUTHORITY, JOHN
DOES 1-10, DETROIT WATER & SEWERAGE
DEPARTMENT, and CITY OF DETROIT,

Defendants-Appellees.

No. 367529
Wayne Circuit Court
LC No. 21-014161-CZ

SHANNON ADAMS, GLENN BELCHER,
ARLETTE CALLAWAY, CHARLES CHAPPELL,
CYNTHIA CHAPPELL, KAREN EAGLE,
FLORENCE FRANKLIN, WILLIAM FRANKLIN,
PAULINE GEORDON, WILLIE GEORDON,
FORTUNATA GUTIERREZ, MATHEW
JOHNSTON, MARZETTA JONES, KIYA
KRIVICKAS, KANESHIA SMITH, DORIS
TORRES, NEARLINE WILLIS, JOREL WILSON,
and SHELLARY WILSON,

Plaintiffs-Appellants,

v

GREAT LAKES WATER AUTHORITY, CITY OF
DETROIT, DETROIT WATER & SEWERAGE
DEPARTMENT, and JOHN DOES 1-10,

Defendants-Appellees.

No. 367530
Wayne Circuit Court
LC No. 21-008745-CZ

ANDREA ANDRZEJCZAK, JOEL ARMITAGE,
AMANDA ARMITAGE, ALPHONSO AVILA, JR.,
ROBERT BACHTEAL, LYNDA BACHTEAL,

GAYLA BATTS, STEPHEN BENARD, JENNIFER BLANZY, NICOLE CADIEUX, TODD CAMPBELL, JILL CAMPBELL, HOWARD CARL, ROBIN CARL, ROBERT CARR, JEFFREY CHILTON, JOE CHOMA, ROBERT CHOWN, JILL CHOWN, DAVE CHUDY, JENNIFER CHUDY, SAMUEL CHURIKAN, TERRANCE CIROCCO, MARY CIROCCO, CHRIS COTZIAS, CHARLES CRANE, WILLIAM CRAWFORD, AUBREY CRAWFORD, JENNIFER CRAWLEY, JOHN CRISSMAN, MARIA CSERHALMI, STANLEY DANIELUK, DENNIS DEHN, MICHAEL DEMPSEY, SUSAN DEMPSEY, MARK DERMANULIAN, DAWN DERMANULIAN, CHRIS D'HONDT, NANCY D'HONDT, ELAINE DUPUE, MICHAEL EISENLOHR, LINDSAY EISENLOHR, BRAD ETHERIDGE, RICHARD ETHERIDGE, CYNTHIA ETHERIDGE, MIKE FANNON, SARA FISCHER, CHAD FISHER, MARGRET FISHER, CHARLES FISHER, MICHELLE FISHER, CHARLES A. FISHER, JAMES FLANNERY, JOSEPH FRANCIS, KELLY ANN FRANCIS, JEFFERY GRAHAM, SUSAN GRAHAM, ANTHONY GRIFFIN, SUSAN GRIFFIN, JAY HACKLEMAN, CAROL HACKLEMAN, NOAH HALL, TAYLOR HANSEN, RENEE HANSEN, CHRIS HARRISON, MICHELLE HARRISON, BOB HEIMBUCH, CHAD HEPNER, KIMBERLY HEPNER, BRANDON HESS, CHERYL HESS, JOHN HESSBURG, T.J. HESSBURG, ERIC HILLIARD, WILLIAM HORNER, MARK HUGHES, DARIUS HUMMEL, RUTH HUMMEL, ELIZABETH HURFORD, ALBERT IAFRATE, SABINE IAFRATE, EVELYN INEMPOLIDIS, MARSHALL IRBY, ANN IRBY, ANDREW JARVIS, LECITIA JONES, TIMOTHY JORDAN, SAMANTHA JORDAN, KATELYN JURCAK, MARY ELLEN KAISER, MARY KAROLAK, JAYNE KASUBA, CAROL KERN, KENNETH KOREJWO, MICHAEL KOZAK, CHRISTINA KOZAK, DAVID LANDUYT, HELEN LANDUYT, PAMELA LEBLANC, RODERIC LORENZO, LIZANNE G. MACGILLIS, MARTHA MACKINNON, LAREEN MANLEY, JULIANNE MARSHALL, MOLLY MCDERMOTT, MARTIN

D. MCMILLAN, DONNA MCMILLAN, WILLIAM A. MESTDAGH, ANN METRY, NARAYANA MEYER, LAURA MEYER, ERIC MITCHELL, LAURIE MITCHELL, JOE MONTE, AUSTIN MOORE, JOHN MORAN, KATHRYN MORAN, DAVID MOSS, BARAKET MOUAWAD, SARAH MOUWAD, RONNY MUAWAD, JENNIFER MUNSON, JEFF NYENHUIS, KIM NYENHUIS, KENNETH NYENHUIS, BEVERLY NYENHUIS, LAURA S. ORME, PANO PAPALEKAS, HELEN PAPALEKAS, ALEX PARKER, JOHN PECK, DORIS PERRY, KOULA PERVANIS, LARRY D. PETERSON, JEANNE A. PETERSON, CHERYL PICCONE, STEVEN PICCONE, CHRIS QUINN, EBONI QUINN, NANCY RADE, TOM RICHTER, JILL RICHTER, BILL ROCHE, ROBERT ROGERS, THOMAS RUBENS, KATHLEEN RUBENS, GERARD SCHILLING, JULIE SCHILLING, JAMES SCHMIDT, JO MARIE SHARBA SCHMIDT, PHILIP SHALHOUB, MICHELLE SHALHOUB, BRIAN SHARP, SARAH SHARP, GREG SHARROW, MARNE SHARROW, BASIL SIMON, JOHN SMOLINSKI, JOSEPH SOLOMON, BLERTA SPIRO, SUSAN STANLEY, SHERILYN RUSSELL AND MARTIN STEIGER, Trustees of the STEIGER REVOCABLE LIVING TRUST, IAN STUDDERS, DEL SZURA, ROBERT TICKNOR, PATRICE TICKNOR, ELVIS TORRES, EMMA TORRES, LESLIE TRUDEL, ARIF ULKU, HEATHER ULKU, JOHN VAN OSDAL, AMY VAN OSDAL, JEROME VANSLEMBROUCK, DENISE VANSLEMBROUCK, JAMES VOGT, GRIFFIN WAGNER, ELIZABETH WANG, JOHN WHEELER, SAMANTHA WITTSTOCK, ANN YEAMANS, TIM YINGER, MICHELE YINGER, APRIL LEHMAN, JOEL VALDEZ, JAMES SANDERCOTT, DEBBIE TAYLOR, ROBERT JENDRUSINA, ELLEN DEVINE, FRANCIS ORTIZ, CHERYL GATES, and MICHAEL STONE-RICHARDS,

     Plaintiffs-Appellants,

v

No. 367531
Wayne Circuit Court

-6-

GREAT LAKES WATER AUTHORITY, JOHN
DOES 1-10, DETROIT WATER & SEWERAGE
DEPARTMENT, CITY OF DETROIT, and CITY
OF GROSSE POINTE PARK,

        Defendants-Appellees.

LC No.  21-013480-CZ

---

TIMOTHY BRADY, MICHELLE BRADY, JEFF
AUSTIN, PAMELA BUTLER, JOHN CARTER,
NORMA CERVOLO, ERIN COLPAERT,
WILLIAM CONWAY, CHRIS COTZIAS, BRIAN
CRANE, CAREY CRANE, HARRY CRANE,
JENNIFER CRANE, JOHN DOERER, DAVID
FOY, THOMAS GIANCARLO, KATHLEEN
GIANCARLO, MARYBETH HALL, ERIK
HARMS, NICOLE HARMS, MATTHEW
HINDELANG, DAVID HUME, KATHRYN
HUME, TODD IFKOVITZ, KRISTEN IFKOVITZ,
DAN MAIDLOW, LARRY MANN, META
MARTINEZ, JAMES MATTHEWS, JULIE
MATTHEWS, JOHN PAPAS, LISA PAPAS,
CHARLES PARRENT, JOHN PECK, PATRICIA
REED, GIB RIST, BRIDGETTE RIST,
CHRISTOPHER SHEEREN, JULIE SHEEREN,
JAMES STOLAKIS, LARRY STONE, ROBERT
THIEL, PETER TORRICE, ANGELENA
TORRICE, DOUG TURNBULL, JANINE
TURNBULL, SARAH URBANI, WESLEY
VANDERBRINK, MARINA VANDERBRINK,
WALTER WALKER, KAREN WALKER, JOHN
WHEELER, DAVID WILSON, and SUSAN
WILSON,

        Plaintiffs-Appellants,

v

GREAT LAKES WATER AUTHORITY, JOHN
DOES 1-10, DETROIT WATER & SEWERAGE
DEPARTMENT, CITY OF DETROIT, and CITY
OF GROSSE POINTE,

        Defendants-Appellees.

No.  367532
Wayne Circuit Court
LC No.  21-013987-CZ

---

THOMAS BEARSE, SALLIE BEARSE,
ELIZABETH BOJALAD, MEGAN BROWN,
ROBBIE CRANDALL, JR., WILLIAM
EDWARDS, REBECCA EDWARDS,
JACQUELINE GABBANA-JAN, KENNETH
GEHLERT, SHANTERILL GRIFFIN-MCMILLAN,
KELLY KLEINER, PERRY KNIGHT, TOM
LAYMAN, DENISE MATTHEWS, DAVID
MAXWELL, ESTHER MAXWELL, COURTNEY
MCRILL, HELENA PEREZ, DANIELLE RYAN,
SUSAN SALHANEY, NABIL SHURAFA,
STEVEN SILVA, DAVID TESTA, JIM VICTOR,
and MARTHA VICTOR,

       Plaintiffs-Appellants,

v                                                                          No.   367534
                                                                           Wayne Circuit Court
GREAT LAKES WATER AUTHORITY, DETROIT          LC No.   21-013979-CZ
WATER & SEWERAGE, CITY OF DETROIT,
CITY OF GROSSE POINTE FARMS, and JOHN
DOES 1-10,

       Defendants-Appellees.

DOUGLAS BULKA, AMANDA BE, KHENG BE,
JAMES BELLAMY, MELISSA BELLAMY,
HAYLEY BONAFEDE, MARCOS BONAFEDE,
LAURA BULKA, MARCY CHANTEAUX, ARON
ELLIS, KRISTY ELLIS, JESSE FORD, MEGAN
FORD, ERIC FRAKES, KAREN FRAKES,
BETTYE P. MOORE, ROBERT S. MOORE,
BARBARA PARKER, and KELLY VERGAUWEN,

       Plaintiffs-Appellants,

v                                                                          No.   367535
                                                                           Wayne Circuit Court
GREAT LAKES WATER AUTHORITY, CITY OF          LC No.   21-008465-CZ
DETROIT, DETROIT WATER & SEWERAGE
DEPARTMENT, CITY OF GROSSE POINTE
PARK, and JOHN DOES 1-10,

       Defendants-Appellees.

MARLETTE LANELL, LINDA ASMUS, ROBERT
ASMUS, ALICE BLACKMORE, ANNA BOUMA,
KATIE CARETTI, DAVID CHUDY, JENNIFER
CHUDY, BRADLEY ETHERIDGE, JOAN
FERRARA, RACHELE KELLER, PETER
LACOMBE, BRIAN MCKENNA, DEREK
MULLER, BRIDGET O'SHEA, JOHN O'SHEA,
ALICE ODDO, WILLIAM ODDO, HOLLY RYAN,
SHAWN RYAN, CHARLES SMITH, KATHLEEN
STARR, ANDREW TRIPLETT, DANIEL
WEBSTER, and DANIEL WILK,

   Plaintiffs-Appellants,

v

GREAT LAKES WATER AUTHORITY, CITY OF
DETROIT, DETROIT WATER & SEWERAGE
DEPARTMENT, CITY OF GROSSE POINTE
PARK, and JOHN DOES 1-10,

   Defendants-Appellees.

No. 367536
Wayne Circuit Court
LC No. 21-009030-CZ

CHAS VERHEYDEN, INC., ALTELIER INC.,
doing business as CHEZ LOULOU, ALTER
DEVELOPMENT, LLC, HALEY BONAFEDE,
MARCOS BONAFEDE, BRIAN EVANS
TRANSMISSION, INC., JENNIFER CRAWLEY,
THOMAS DOW, BRANDY EDMONDS, JESSE
FORD, MEGAN FORD, KENNETH GRAY, JOHN
HAEDRICH, SARA HOEFLER, KENNETH
KOREJWO, MARYLAND INVESTMENT
GROUP, MB SALON, LLC, WILLIAM
MESTDAGH, LAURA MEYER, NARAYANA
MEYER, MR. ME APPLIANCE, ROBERT
NEDWICKI, OPEN DOORS PROPERTY
MANAGEMENT, AMY OTTERSON, JOHN
PECK, PRESENT TENSE HOLDINGS, LLC,
ROBERTA RILEY-JONES, RMB PROPERTY,
LLC, JOYCE ROBINSON, JEREMY SINGER,
THARSI SIVARAJAH, SPROUT HOUSE
NATURAL MARKET, MICHAEL STONE-
RICHARDS, JENNIFER SWANSON, LORI
TAYLOR-GRAY, TIERRA ESTE LLC, TRENTON

-9-

PROPERTIES, LLC, TRIPLE J APARTMENTS,
LLC, ARIF ULKA, HEATHER ULKA, JOHN
WHEELER, CHARLES WHITE, RYAN WILDE,
MICHELE YINGER, and TIM YINGER,

        Plaintiffs-Appellants,

v

GREAT LAKES WATER AUTHORITY, CITY OF
DETROIT, DETROIT WATER & SEWERAGE
DEPARTMENT, CITY OF GROSSE POINTE,
CITY OF GROSSE POINTE PARK, and JOHN
DOES 1-10,

        Defendants-Appellees.

No.   367538
Wayne Circuit Court
LC No.   22-003449-CZ

ON RECONSIDERATION

Before:  GADOLA, C.J., and RICK and MARIANI, JJ.

PER CURIAM.

These consolidated appeals involve suits to recover damages arising from sewer backups that happened during a severe rain event in the Metro Detroit area in June 2021.  Plaintiffs are homeowners and businesses whose properties had untreated wastewater flood into their basements during the rain event.  Plaintiffs claim that defendant, Great Lakes Water Authority (GLWA), which operated the regional sewerage system, was largely responsible for the sewer backups. Plaintiffs also allege that the various municipalities and municipal departments that owned or operated local sewerage infrastructure connected to GLWA's infrastructure, or which had agreements with GLWA, were jointly responsible for the backups.  These include defendants, the cities of Detroit, Grosse Pointe Park, Grosse Pointe, Grosse Pointe Farms, Grosse Pointe Woods, Grosse Pointe Shores, Harper Woods, the Detroit Water & Sewerage Department (DWSD) and the Southeast Macomb Sanitary District (SMSD).  Finally, plaintiffs in several of the lower court cases sued a group of GLWA employees—identified as John Does 1 through 10—for negligently responding to the rain event on behalf of GLWA.

In Docket No. 365363, plaintiffs, who were represented by Dubin Law, PLLC, in the lower court (collectively, the Dubin plaintiffs), appeal by right the trial court's order dismissing their claims against GLWA, Detroit, Grosse Pointe Park, Grosse Pointe, Grosse Pointe Farms, Grosse Pointe Woods, Grosse Pointe Shores, Harper Woods, and SMSD for damages permitted under the act allowing recovery for sewage disposal system events.  See MCL 691.1416 to MCL 691.1419. For the reasons discussed below, we affirm in part the trial court's decision to dismiss the Dubin plaintiffs' claims against the City of Detroit, but otherwise reverse the trial court's decision to dismiss the Dubin plaintiffs' claims against all remaining defendants.

In Docket Nos. 367529, 367530, 367531, 367532, 367534, 367535, 367536, and 367538, plaintiffs, who were represented by Johnson Law, PLC, in the lower court (collectively, the Johnson plaintiffs), appeal by delayed leave granted[1] the trial court's order dismissing all of their claims against GLWA, Detroit, DWSD, John Does 1 through 10, Grosse Pointe, Grosse Pointe Park, and Grosse Pointe Farms, after defendants successfully moved for summary disposition. We affirm the trial court's decision to dismiss the Johnson plaintiffs' inverse-condemnation claims against defendants, and to dismiss the claims under MCL 691.1417(3) against Detroit and DWSD. We reverse the court's decision to dismiss the claims against John Does 1 through 10, and the decision to dismiss the claims under MCL 691.1417(3) against GLWA, Grosse Pointe, Grosse Pointe Park and Grosse Pointe Farms. We remand for further proceedings consistent with this opinion, including affording the Johnson plaintiffs an opportunity to move to amend the complaint as to Grosse Pointe and Grosse Pointe Park.

## I. FACTUAL BACKGROUND

The city of Detroit operates DWSD. Detroit once operated its sewer system as a regional sewer system that served wholesale customers—such as nearby municipalities—in addition to its own retail customers. Local sewers collected wastewater from Detroit's streets and retail customers, which was then conveyed to a regional interceptor or trunk sewer. Wholesale customers also sent wastewater to these regional interceptors or trunk sewers. The wastewater was then conveyed to treatment facilities before eventual discharge. As of January 1, 2016, GLWA leased Detroit's regional sewerage infrastructure for a 40-year period. GLWA thereafter assumed the obligation to maintain and manage the regional sewer system.

The regional sewer system, now operated by GLWA, is a combined stormwater and sewer system that conveys both sewage and stormwater in the same sewers. Michigan generally requires a combined system to have the ability to handle a 10-year, 1-hour storm. According to the Michigan Combined Sewer Overflow Control Manual,[2] first promulgated in 1994, the state recommended that systems be able to handle more than that, although the state did not require a system to be able to handle more than a 25-year, 24-hour storm under any circumstances. The trunk sewers that Detroit leased to GLWA were designed to convey the flow for a 10-year, 1-hour storm. A 1-year, 1-hour storm, for example, involves 0.8 to 1.2 inches of precipitation in one hour.

GLWA's regional sewer system primarily relies on gravity to convey the wastewater. In some locations, however, gravity is not sufficient and the system uses pumping stations to maintain flow. To that end, Detroit constructed and owned the Conner Creek and Freud Pumping Stations, which were leased to GLWA as part of the regional system. The Conner Creek and Freud Pumping Stations serve Detroit's east side. They also indirectly serve Grosse Pointe Park, Grosse Pointe,

---

[1] *Achtabowski v Great Lakes Water Authority*, unpublished order of the Court of Appeals, entered December 19, 2023 (Docket No. 367529).

[2] State of Michigan, *Combined Sewer Overflow Control Program Manual* <https://www.michigan.gov/-/media/Project/Websites/egle/Documents/Programs/WRD/CSO-SSO/control-program-manual.pdf?rev=7bae5049694248829505eea3508fd343> (accessed September 23, 2025).

and Grosse Pointe Farms. During storms, both pumping stations use pumps to convey sewage-stormwater mixtures to the Conner Creek Combined Sewer Overflow (CSO), where it is then treated and discharged. If problems at the pumping stations lead to a decrease in pumping capacity, then the volume of wastewater reaching the Connor Creek CSO may cause backups. If that happens, overflow gates in an area called the Fox Creek Structure normally open and discharge water into Fox Creek. If that continues to be insufficient to relieve the pressure, other upstream regional sewers might then back up, which in turn could cause local sewers to back up. If local sewers that are tributary to these regional sewers are unable to discharge into the regional trunk sewer, then private properties' basements may flood.

The Conner Creek Pumping Station has four sanitary pumps and eight storm pumps. The Freud Pumping Station has eight storm pumps. The purpose of these pumps is to prevent sewage from backing up into homes and businesses during a rain event. As of 2016, GLWA rated all eight pumps from the Freud Pumping Station as poor. Part of the problem with the pumping stations was that a certain elevation of water was needed to prime the pumps and the water level had dropped. During heavy rains, residents need all 16 storm pumps to operate properly.

A significant rainstorm pummeled the Metro Detroit area on June 25 and 26, 2021. In some areas, it produced more than 8 inches of rain in a 24-hour period. The rainfall amounted to a 1,000-year storm for some areas. During that rain event, hundreds of private property owners experienced wastewater backups into their basements.

The Dubin and Johnson plaintiffs sued the various defendants to recover for the damages that they suffered caused by these backups. In October 2021, the Dubin plaintiffs asserted a single class action under MCL 691.1416 arising from the sewer backups. In April 2022, the trial court consolidated the cases for purposes of the litigation. GLWA and Detroit, which also acted on behalf of DWSD, each moved for summary disposition of the claims made by the Dubin and Johnson plaintiffs. The other defendants concurred with those motions, and the trial court held a combined hearing on the motions in August 2022. In March 2023, the court entered an opinion and order dismissing the Dubin plaintiffs' claims. In a separate opinion and order, the court dismissed all of the remaining claims involving the Johnson plaintiffs.

As earlier noted, the Dubin plaintiffs appealed by right the opinion and order dismissing their claims in Docket No. 365363. The Johnson plaintiffs appealed by leave granted the trial court's opinion and order dismissing their claims in each of the eight cases involving them in Docket Nos. 367529, 367530, 367531, 367532, 367534, 367535, 367536, and 367538. This Court consolidated all the appeals for the efficient administration of the appellate process.[3]

## II. DUBIN PLAINTIFFS' APPEAL IN DOCKET NO. 365363

### A. CLASS CERTIFICATION

---

[3] *Dubrulle v Great Lakes Water Authority*, unpublished order of the Court of Appeals, entered June 20, 2024 (Docket Nos. 365363, 367529, 367530, 367531, 367532, 367534, 367535, 367536, and 367538).

The Dubin plaintiffs first argue that the trial court erred when it determined that they failed to timely move for class certification. We agree.

"The analysis a court must undertake regarding class certification may involve making both factual findings and discretionary decisions." *Mich Ass'n of Chiropractors v Blue Cross Blue Shield of Mich*, 300 Mich App 551, 559; 834 NW2d 148 (2013). Consequently, we review the lower court's factual findings for clear error and its discretionary decisions for an abuse of that discretion. *Id.* "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *Duncan v Michigan*, 300 Mich App 176, 185; 832 NW2d 761 (2013). This Court reviews de novo whether the trial court properly interpreted and applied the relevant court rules. See *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012).

After the trial court granted a motion to amend their complaint, the Dubin plaintiffs filed a second amended complaint on March 1, 2022. The Dubin plaintiffs alleged in the amended complaint that they were bringing the action on their own behalf, as well as on behalf of all "similarly situated persons or entities that filed a Notice of Claim relating to a Sewage System Disposal Event that occurred on June 25-26, 2021 in the cities of Detroit, Grosse Pointe, Grosse Pointe Park, Grosse Pointe Woods, Grosse Pointe Farms, Grosse Pointe Shores, and Harper Woods." The Dubin plaintiffs further alleged the other elements necessary to establish a class. In its opinion and order dismissing the Dubin plaintiffs' claims, the trial court indicated that it reviewed the register of actions and noted that the Dubin plaintiffs had not moved for class certification. The court thus determined that they waived their class action.

Plaintiffs "must move for certification" of a class action within "91 days after the filing of a complaint that includes class action allegations." MCR 3.501(B)(1)(a). If a plaintiff fails to do so, the defendant may file a notice of that failure in the trial court. "On the filing of such a notice, the class allegations are deemed stricken, and the action continues by or against the named parties alone." MCR 3.501(B)(2). The trial court has the authority to reinstate the allegations if the failure was "due to excusable neglect." MCR 3.501(B)(2).

Our review of the record indicates that the Dubin plaintiffs' second amended complaint plainly contained class allegations. As such, they had to move to certify the class within 91 days of the date that they filed the second amended complaint. They did not. Within that 91-day period, however, the trial court entered a stipulated order to rectify all the competing scheduling orders entered in the various consolidated cases. In that order, the parties stipulated that the deadlines for the filing of any motions for class certification pursuant to MCR 3.501 in the consolidated cases are adjourned until such time that a new scheduling order for the consolidated cases will be entered either by stipulation of the parties or following a hearing on a currently pending motion for entry of a case management order.[4] The trial court never entered a new case management order. Instead, it proceeded to consider the motions for summary disposition.

---

[4] Grosse Pointe Farms and Harper Woods argue that the trial court never entered this order. They attempt to support that contention by noting that the copy of the order submitted on appeal was not signed and by stating that the register of actions does not contain an entry for the order. The trial

The court rules specifically allow the parties to stipulate to the extension of the class-certification deadline. See MCR 3.501(B)(1)(b). As such, the trial court's stipulated order effectively suspended the deadline for moving for class certification. Additionally, there is no indication that any defendant filed a notice of failure in relation to the second amended complaint, which would trigger the striking of the class allegations under MCR 3.501(B)(2). Moreover, the Dubin plaintiffs' reliance on that stipulated order would constitute—at the very least—excusable neglect, which would in turn warrant reinstating the allegations even if stricken. See MCR 3.501(B)(2). For these reasons, the trial court erred as a matter of law when it determined that the Dubin plaintiffs waived their right to seek class certification. See *Brecht*, 297 Mich App at 736. Consequently, the Dubin plaintiffs must be allowed to move for class certification on remand.

## B. MOTIONS BY CONCURRENCE

The Dubin plaintiffs next argue that the trial court erred when it allowed some defendants to move for summary disposition by concurring in GLWA's motion for summary disposition.[5] We disagree.

GLWA moved for summary disposition under MCR 2.116(C)(7). Detroit also separately moved for summary disposition of the Dubin plaintiffs' claims. The other defendants filed concurrences, either to GLWA's first or second motion. On appeal, the Dubin plaintiffs argue that the trial court erred to the extent that it addressed whether Grosse Pointe, Grosse Pointe Park, Grosse Pointe Farms, Grosse Pointe Woods, Grosse Pointe Shores, Harper Woods, and the SMSD were entitled to immunity because those entities did not properly raise the defense of governmental immunity in their own motions for summary disposition. More specifically, the Dubin plaintiffs suggest that the aforementioned defendants had to file separate motions for summary disposition and could not simply concur in GLWA's motion.

There is no court rule that prevents a party from moving for summary disposition by adopting a ground for summary disposition asserted by a different party. The sole question is whether the concurrence at issue in this case was sufficiently clear to put plaintiffs on notice of the need to respond, and whether plaintiffs had a meaningful opportunity to respond. See *Al-Maliki v LaGrant*, 286 Mich App 483, 488-489; 781 NW2d 853 (2009); *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). GLWA moved for summary disposition on the ground that the Dubin plaintiffs could not establish causation because its sewer system was only designed to handle a 10-year, 1-hour storm, not a 1,000-year

court did not manually sign the order that appears in the lower court record, but it nevertheless has the notation "/s/ Annette J. Berry 4/28/2022." The register of actions for this matter likewise shows an entry on April 28, 2022 stating "Case Removed from Case Evaluation, Signed and Filed." The record thus shows that the trial court signed and entered this order.

[5] The Dubin plaintiffs' argument implicates whether the concurring defendants met the minimum requirements for a motion for summary disposition as well. To the extent that this claim of error can be understood as a challenge to the merits of the motions by the concurring entities, we address the merits in the analysis of the following claims of error.

storm like the one that hit Metro Detroit in June 2021. The concurrences by Grosse Pointe Farms, Grosse Pointe Shores, Harper Woods, and SMSD indicated that these defendants were asserting the same argument as GLWA. Accordingly, they were sufficient to place the Dubin plaintiffs on notice of the need to establish causation as to those defendants on the same basis.

Grosse Pointe, Grosse Pointe Park, and Grosse Pointe Woods also concurred in GLWA's motion. They additionally clarified their belief that the Dubin plaintiffs had not identified a defect in their specific systems beyond arguing that the systems should have been designed to handle more wastewater than that produced by a 10-year, 1-hour storm. They asserted that such speculation did not amount to an actual defect. This concurrence was also sufficient to place the Dubin plaintiffs on notice of the need to respond to the claim that the Dubin plaintiffs could not establish causation and had not adequately identified a defect in the systems specifically maintained by Grosse Pointe, Grosse Pointe Park, and Grosse Pointe Woods.

At a hearing on the motions, counsel for Grosse Pointe, Grosse Pointe Park, and Grosse Pointe Woods restated the argument that a lack of capacity was not a defect within the meaning of the exception to immunity stated under MCL 691.1417(3). The lawyers for Harper Woods, Grosse Pointe Farms, Grosse Pointe Shores, and SMSD orally adopted those arguments.

The concurrences by Grosse Pointe, Grosse Pointe Park, Grosse, Pointe Woods, Grosse Pointe Farms, Grosse Pointe Shores, Harper Woods, and SMSD were sufficient to place the Dubin plaintiffs on notice of the need to respond to GLWA's arguments on causation, as those arguments might apply to the concurring entities. The Dubin plaintiffs were also on notice of the need to respond to the argument by Grosse Pointe, Grosse Pointe Park, and Grosse Pointe Woods, which was adopted by the other concurring entities at the hearing: that a lack of capacity to handle a 1,000-year storm was not by itself a defect that could meet the requirements of MCL 691.1417(3)(b). The Dubin plaintiffs were, therefore, on notice of the need to identify a specific defect in the concurring entities' systems that would support their claims.

By concurring in GLWA's motion, the concurring parties limited their motion to the arguments and evidence asserted by GLWA except as augmented in their concurrences. For that reason, if there were a fatal deficiency in GLWA's motion, that deficiency would apply equally to their concurrences. Additionally, if GLWA's evidence and arguments applied only to its own system, that too might be fatal to the concurring defendants' motions. Nevertheless, whether the limitations in GLWA's brief in support of its motion would warrant denying the motions by concurrence is a separate matter. The trial court ultimately did not err to the extent that it considered the motions for summary disposition made by concurrence.

## C. GLWA'S MOTION FOR SUMMARY DISPOSITION

The Dubin plaintiffs next argue that the trial court erred when it dismissed their claims under MCL 791.1417(3) against GLWA and the defendants who concurred in GLWA's motion (Grosse Pointe, Grosse Pointe Park, Grosse Pointe Farms, Grosse Pointe Woods, Grosse Pointe Shores, Harper Woods, and the SMSD) on the ground that they could not establish that a defect in the sewer systems proximately caused the backups at issue. We find that summary disposition in this matter was premature.

This Court reviews de novo a trial court's decision on a motion for summary disposition, *Barnard Mfg*, 285 Mich App at 369, and whether the trial court properly applied the law of governmental immunity, *Champine v Dep't of Transp*, 509 Mich 447, 452; 983 NW2d 741 (2022). GLWA moved for summary disposition under MCR 2.116(C)(7) (governmental immunity) and (C)(10) (no genuine issue of material fact). "In determining whether summary disposition under MCR 2.116(C)(7) is appropriate, a court considers all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them." *Garrett v Washington*, 314 Mich App 436, 441; 886 NW2d 762 (2016) (quotation marks and citation omitted). When reviewing a challenge to the adequacy of the pleadings under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff. *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010). To the extent that defendants relied on evidence in their motions under MCR 2.116(C)(7), the motions had to be reviewed in the same way that a motion under MCR 2.116(C)(10) would be reviewed. See *Kincaid v Cardwell*, 300 Mich App 513, 537 n 6; 834 NW2d 122 (2013). "If there is no factual dispute, the determination whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law." *Allen Park Retirees Ass'n, Inc v Allen Park*, 329 Mich App 430, 444; 942 NW2d 618 (2019).

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the claim. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). The trial court must consider all evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*. The court may only grant a motion under MCR 2.116(C)(10) when the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

## 1. THE GOVERNMENTAL TORT LIABILITY ACT

Under the governmental tort liability act (GTLA), MCL 691.1401 *et seq*., "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). The Legislature has defined a "governmental agency" to include the state of Michigan and its political subdivisions. MCL 691.1401(a). Political subdivisions include a "municipal corporation," "a county," or "a district or authority authorized by law or formed by 1 or more political subdivisions; or an agency, department, court, board, or council of a political subdivision." MCL 691.1401(e). Defendants are political subdivisions within the meaning of MCL 691.1401(e). As such, they have immunity from tort liability unless an exception to that immunity applies.

Within the GTLA, the Legislature specifically abrogated the common law previously applicable to an overflow or backup of a governmental agency's sewer system and provided a limited exception to tort immunity:

> A governmental agency is immune from tort liability for the overflow or
> backup of a sewage disposal system unless the overflow or backup is a sewage
> disposal system event and the governmental agency is an appropriate governmental

-16-

agency. [MCL 691.16 to MCL 691.19] abrogate common law exceptions, if any, to immunity for the overflow or backup of a sewage disposal system and provide the sole remedy for obtaining any form of relief for damages or physical injuries caused by a sewage disposal system event regardless of the legal theory. [MCL 691.1417(2).]

Thus, a political subdivision can still be liable in tort for an overflow or backup of sewage in their systems if the overflow or backup amounts to a "sewage disposal system event" and the political subdivision meets the definition of an "appropriate governmental agency."

The Legislature also provided that a claimant who "believes that an event caused property damage or physical injury . . . may seek compensation for the property damage or physical injury from a governmental agency" if they can establish the following five elements:

> (a) The governmental agency was an appropriate governmental agency.

> (b) The sewage disposal system had a defect.

> (c) The governmental agency knew, or in the exercise of reasonable diligence should have known, about the defect.

> (d) The governmental agency, having the legal authority to do so, failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect.

> (e) The defect was a substantial proximate cause of the event and the property damage or physical injury. [MCL 691.1417(3).]

Accordingly, to avoid the immunity afforded to political subdivisions involving the overflow or backup of a sewer system, the Dubin plaintiffs had to plead and prove each of the five elements stated under MCL 691.1417(3). Relatedly, MCL 691.1416(e) defines a "defect" as "a construction, design, maintenance, operation, or repair defect." We note that the definition of a "defect" under this subsection contains the word "defect," which has previously been defined by this Court as " 'a fault or shortcoming; imperfection.' " *Willett v Waterford Twp*, 271 Mich App 38, 51; 718 NW2d 386 (2006), quoting *Random House Webster's College Dictionary* (1997).

## 2. THE DUBIN PLAINTIFFS' COMPLAINT

In their complaint, the Dubin plaintiffs alleged that GLWA operated a regional system with serious defects, particularly at the Freud and Conner Creek pumping stations. The Dubin plaintiffs alleged that the defects in those pumping stations were well documented and that the stations had experienced pump failures in the past. They stated that none of the problems with the pumping stations had been rectified and that the pumping stations had only half their pumps operating during the storm. They asserted that the pump failures caused the surcharging into the Dubin plaintiffs' basements.

As for defendants who operated local sewer systems, the Dubin plaintiffs alleged generally that those systems were aging and that there was a "risk of deterioration," which could cause

unexpected sewer backups.  The Dubin plaintiffs also alleged that the local system entities had inadequate maintenance regimens in place, which reduced the system's overall capacity.  The Dubin plaintiffs further alleged that the entities that operated these local sewers knew or should have known about the reduction in capacity.  They alleged that the defects in the sewer systems led to surcharging into the lateral sewer line attached to the Dubin plaintiffs' properties, resulting in backups and damage to plaintiffs' basements.

The Dubin plaintiffs specifically alleged that Detroit's local system allowed more water to enter the system than it was designed to convey.  They stated that Detroit should have designed the system to convey all the water captured by inlets and that Detroit should have had a CSO that could capture excess water.  The Dubin plaintiffs concluded that these defects also caused surcharging in Detroit's local system, which led to sewer backups.

Turning to SMSD, the Dubin plaintiffs alleged that SMSD allowed excess water into its system, which exceeded its pumping capacity.  They maintained that SMSD should have regulated the inflows or installed relief sewers to handle the excess flow.  They further alleged that SMSD tried to discharge its own flow into GLWA's Fox Creek Enclosure when that enclosure had already been overwhelmed, which led to surcharging in SMSD's system.

The Dubin plaintiffs additionally alleged that Grosse Pointe, Grosse Pointe Farms, Grosse Pointe Park, Grosse Pointe Shores, and Grosse Pointe Woods collected more water than the system could handle and conveyed wastewater into GLWA's system when that system was already overwhelmed, which led to backups.  They also alleged that these systems should have had a CSO to handle excess water and should have had regulators to prevent excess water from entering the system.

## 3. CAUSATION

In its second motion for summary disposition, GLWA argued that it was entitled to summary disposition under MCR 2.116(C)(7) because the Dubin plaintiffs could not establish that GLWA was the cause in fact or the proximate cause of any sewer disposal system event.  Instead, GLWA maintained that the record-setting rainfall was both the cause in fact and proximate cause of the backups.  GLWA presented evidence that a 10-year, 1-hour rain event for the Detroit area was from 1.39 to 2.05 inches of rain, whereas a 1000-year, 1-hour rain event would be 2.45 to 4.99 inches of rain.  GLWA relied on rainfall data to establish that the Metro Detroit area experienced record-breaking rainfall amounts.  GLWA explained:

> On the night of June 25, 2021, and continuing into the morning of June 26, 2021, a storm of record intensity and duration struck Southeast Michigan.  Over six inches of rain fell on most of the Detroit area, and as much as 8.9 inches of rain were recorded in some areas.  In Grosse Pointe Park, 7.33 inches poured down in just the 5-hour period from 10:50 PM on the 25th to 4:00 AM on the 26th.

> The rain came in three waves.  The first two bursts delivered about one inch of rain across a wide geographic area.  After the second wave, the regional collection and treatment systems were nearing their capacity.  Then came the third wave, which delivered approximately six inches of rain in most areas.  During and

-18-

following the third burst, the collection system was overloaded, most level sensors were maxed out and water was flooding to the ground surface levels. Treatment facilities were functioning at or near their maximum capacities and outfalls were discharging untreated flow to both the Detroit and Rouge Rivers.

GLWA also submitted a report by meteorologist Paul H. Gross, who stated that the rainfall for one hour in Grosse Pointe, Grosse Pointe Park, and Grosse Pointe Woods amounted to a 200- to 500-year event. When calculated over more than one hour, the rain event was a 1000-year event. GLWA also presented evidence that it was reasonable to design a system to handle storm water generated only by a 10-year, 1-hour rain event. Thus, GLWA maintained that even if the system was running perfectly, it was not designed to handle the level of water that occurred on the night at issue. For that reason, it asked the trial court to grant its motion for summary disposition.[6]

On appeal, the Dubin plaintiffs argue that the trial court misapplied the law when it determined that they could not establish that any defects in defendants' sewer systems amounted to a substantial proximate cause of their damages. The trial court recognized that GLWA challenged the Dubin plaintiffs' ability to establish proximate cause and agreed with GLWA's argument. The court stated that "because the June 25-26, 2021 rainfall volume exceeded the system capacity and made flooding inevitable, the other issues cannot satisfy the 'substantial proximate cause' prong."[7]

Generally, in order to establish a tort claim, the plaintiff must prove that the defendant's acts or omissions proximately caused the plaintiff's injuries. See *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994). Causation encompasses two separate elements: cause in fact and legal cause. *Id*. at 162-163. A plaintiff can show cause in fact by presenting evidence that, but for the act or omission, the plaintiff's injury would not have occurred. Legal cause, also known as proximate cause, addresses whether the defendant should be held liable for his or her actions or omissions that were the cause in fact of the plaintiff's injuries. It usually involves examining the foreseeability of consequences. A plaintiff must be able to prove cause in fact before proximate cause becomes a relevant inquiry. *Id*. at 163.

The term "proximate cause" is a legal term of art. See *Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004). When considering proximate causes, it is error to conflate factual cause with proximate cause. See *Ray v Swager*, 501 Mich 52, 74; 903 NW2d 366 (2017). As our Supreme Court has explained,

"the proximate cause" is not determined by weighing factual causes. Such an approach distorts the meaning of "the proximate cause" by severing it from the concept of legal causation . . . . Although some of our earlier decisions refer to factual causation in connection with proximate cause, these cases merely reflect the

_____

[6] As already noted, defendants other than Detroit concurred in GLWA's motion for summary disposition.

[7] The trial court apparently concluded that the Dubin plaintiffs could not establish that element for each defendant, even though Detroit did not present an argument on proximate cause in its brief.

unremarkable proposition that an actor cannot be a "proximate cause" without also being a "but-for cause." They do not contradict the well-established understanding of proximate cause, which, as we have long recognized, involves the foreseeability of the consequences of the conduct of human actors, regardless of whether "a proximate cause" or "the proximate cause" is at issue. [*Id.* at 66.]

Under the GTLA, a governmental agency is only liable for a sewage disposal system "event" if the system had a "defect" and the "defect was a substantial proximate cause of the event and the property damage or physical injury." MCL 691.1417(3)(e). An event is the "overflow or backup of a sewage disposal system onto real property." MCL 691.1416(k). The Legislature defines substantial proximate cause as "a proximate cause that was 50% or more of the cause of the event and the property damage or physical injury." MCL 691.1416(*l*).

As earlier noted, GLWA contended that the record-breaking rain event was both the cause in fact and the proximate cause of the sewer backups at issue. GLWA presented evidence that its system was reasonably designed to handle rain amounting to a 10-year, 1-hour event. It further presented evidence that the area it serviced experienced a rain event that vastly exceeded its system's capacity, which caused surcharging without regard to whether its system was operating at its designed capacity. At most, GLWA's motion and evidence demonstrated that its system was overwhelmed by the rain, which directly led to surcharging and backups into the basements of properties serviced by that system. By showing that its system could not have conveyed away rainfall of the magnitude that fell that night under any circumstances, GLWA squarely placed at issue the Dubin plaintiffs' ability to prove cause in fact—that, but for defects in the system, the Dubin plaintiffs' basements would not have suffered backups.

On that point, the Dubin plaintiffs argue that the trial court's grant of summary disposition was premature because discovery was not yet complete when the motion was filed. The Dubin plaintiffs assert that further discovery could lend support to their argument. Summary disposition is generally inappropriate before discovery on a disputed issue is complete. See *Oliver v Smith*, 269 Mich App 560, 567; 715 NW2d 314 (2006). Summary disposition is only proper prior to the close of discovery if further discovery does not stand a reasonable chance of uncovering factual support for the opposing party's position. *Id.*

We agree that the Dubin plaintiffs did not have an adequate opportunity to conduct discovery on the issue of causation. Defendants objected to discovery requests, arguing that, because they had moved for summary disposition on the basis of governmental immunity, it was inappropriate to participate in discovery until after the trial court's decision on the motions. But our reading of the record indicates that further discovery might reveal the extent to which particular defects may have contributed to the surcharging that caused backups on the night in question. It was not sufficient for defendants and the trial court to merely announce that the backups were inevitable. With additional discovery, the Dubin plaintiffs could potentially show that, but for the defects, one or more of their properties would not have suffered the backups they did even with the excessive rainfall. Moreover, the evidence might show that a particular governmental entity's defect was a substantial proximate cause of the damage. It was improper for the trial court to grant summary disposition without first allowing the Dubin plaintiffs a reasonable opportunity to conduct discovery. Accordingly, we reverse the trial court's decision to dismiss the Dubin

plaintiffs' claims on the ground that the Dubin plaintiffs could not establish a question of fact on the issue of causation.

## 4. ALTERNATIVE ARGUMENTS BY GROSSE POINTE SHORES

On appeal, Grosse Pointe Shores argues that the Dubin plaintiffs had to investigate their claims and collect evidence to prove them even before filing their complaint.[8] We disagree.

In support of its argument, Grosse Pointe Shores relies in part on MCR 1.109(E)(5)(b). The rule indicates that if a person signs a document submitted to the trial court, their signature constitutes certification that the signer has confirmed that the document is well grounded in fact "to the best of his or her knowledge, information, and belief formed after reasonable inquiry." MCR 1.109(E)(5)(b). Notably, the rule does not govern the burden of production applicable to a motion for summary disposition—those are instead listed under MCR 2.116. Moreover, the law applicable to governmental immunity does not require a complainant to have enough evidence to prove the complainant's claims before filing a lawsuit. The complainant need only plead in avoidance of governmental immunity at that stage, see *Mack v Detroit*, 467 Mich 186, 203; 649 NW2d 47 (2002), and its pleadings need only be grounded by knowledge, information, and belief formed after reasonably inquiry, MCR 1.109(E)(5)(b). Accordingly, MCR 1.109(E)(5)(b) does not establish a basis for denying the Dubin plaintiffs the right to conduct discovery.

Grosse Pointe Shores also argues that the Dubin plaintiffs' claims do not warrant further discovery because they are mere conjecture. We again disagree.

The Dubin plaintiffs alleged in their complaint that each defendant's system had specific defects. They further identified improvements that could have been made to the regional system to prevent more extensive backups. At minimum, the allegations and report identified defects that could have reduced the various systems' ability to convey wastewater, which implicates whether a particular defect or defects might have been the factual cause of a particular event. Accordingly, the Dubin plaintiffs' complaint was made in good faith, and discovery directed at identifying how a particular defect contributed to the level of surcharging that actually occurred would constitute more than a mere "fishing expedition." See *Davis v Detroit*, 269 Mich App 376, 379-380; 711 NW2d 462 (2005). The arguments made by Grosse Pointe Shores on this issue therefore lack merit.

## 5. DESIGN DEFECTS

Relatedly, the Dubin plaintiffs also argue that trial court erred by granting summary disposition on the basis that they failed to show that a design defect existed under MCL 619.1417(3)(b). We agree.

---

[8] Because Grosse Pointe Shores did not file a cross-appeal in this matter, we review these issues to the extent that they can be considered alternative grounds for affirmance. See *Middlebrooks v Wayne Co*, 446 Mich 151, 166 n 41; 521 NW2d 774 (1994) (indicating that an appellee may argue alternative grounds for affirmance of a trial court's ruling).

After reciting the elements that the Dubin plaintiffs had to meet in order to prove their claims, the trial court discussed the claims by GLWA and Detroit that their system designs met statutory standards because the sewer systems were designed to handle a 10-year, 1-hour storm. The trial court concluded that the Dubin plaintiffs could not show that "the system capacity could handle or was required to handle the extraordinary June 25-26, 2021 rainfall." According to the court, even though it was "quite likely that the issues Plaintiffs raise contributed to the surcharge events that led to the basement flooding, these factors do not establish a defect as required by MCL 691.1417(3)." The court thus found that plaintiffs failed to meet their burden to show a defect under MCL 691.1417(3)(b).

As earlier noted, to prevail on their claims, the Dubin plaintiffs must prove that the sewage disposal systems at issue had a defect. See MCL 691.1417(3)(b). However, the Dubin plaintiffs correctly point out that GLWA did not move for summary disposition on that basis. GLWA instead moved for summary disposition on the ground that the Dubin plaintiffs could not establish cause in fact or proximate cause. Indeed, at the hearing on its motions, GLWA's lawyer *conceded* that plaintiffs could establish a defect for purposes of its motions.

GLWA's argument about capacity centered on whether the design of its system was reasonable, which was a factor to consider when assessing whether GLWA adequately supported its motion for summary disposition on the element of causation. More specifically, in the absence of evidence that its system was reasonably designed to handle a 10-year, 1-hour storm, there would be no basis for inferring that rainfall far in excess of that standard demonstrated that any defects in its system were not the but-for cause of the backups at issue. Therefore, the trial court was mistaken to the extent that it understood GLWA's argument about capacity as an argument that the Dubin plaintiffs' claims should be dismissed for failing to identify a defect in GLWA's system.[9]

### D. DETROIT'S MOTION FOR SUMMARY DISPOSITION

The Dubin plaintiffs next argue that the trial court erred by granting Detroit's motion for summary disposition under MCL 691.1417(3).[10] We conclude that summary disposition was proper as to defects that exist in the portion of the system under GLWA's control. We also find, however, that the trial court erred by rejecting the Dubin plaintiffs' argument that Detroit remained responsible for defects existing in Detroit's local system. A genuine issue of material fact remains

---

[9] We note that, with respect to the defendants that concurred in GLWA's motion, the trial court's analysis of the issue of defect was limited to what is discussed above with respect to GLWA, and we decline to reach any matters beyond the scope of that analysis in the first instance here.

[10] On appeal, Detroit argues that the Dubin plaintiffs had to preserve their claim that the motion for summary disposition was premature by meeting the requirements of MCR 2.116(H). That rule provides that a party "may show by affidavit that the facts necessary to support the party's position cannot be presented because the facts are known only to persons whose affidavits the party cannot procure." MCR 2.116(H)(1). MCR 2.116(H) is plainly not a preservation standard. We additionally conclude that the Dubin plaintiffs adequately preserved this claim of error.

as to whether those defects contributed to the June 2021 sewer backups, and summary disposition as to Detroit's local system should not have been granted.

Detroit moved for summary disposition on the ground that the Dubin plaintiffs had not identified any known defects for which Detroit could be liable. The trial court addressed the motion and agreed that Detroit could not be held responsible for GLWA's defects. The court further agreed that the Dubin plaintiffs had otherwise not identified any defects in Detroit's local system. The trial court then dismissed the claims against Detroit on that basis.

In order to establish their claims against Detroit, the Dubin plaintiffs had to allege that, "at the time of the event," Detroit was an appropriate governmental agency, see MCL 691.1417(3)(a); Detroit knew or should have known about a defect in a sewage disposal system, see MCL 691.1417(3)(b) and (c); and Detroit, "having the legal authority to do so, failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect," MCL 691.1417(3)(d).

Detroit moved for summary disposition under MCR 2.116(C)(7), but, unlike GLWA, it did not move for summary disposition on the basis of causation. Instead, it argued that it was entitled to summary disposition because it was not authorized to repair any defects in GLWA's system and thus could not be held liable for defects in that system. It further argued that the Dubin plaintiffs had not identified any known defects in Detroit's local system.

Detroit's lease with GLWA leased all of Detroit's

> right, title, and interest in and to that portion of the real and tangible personal property comprising a part of the Sewer System and owned by the City and providing sewer service to the wholesale customers of the Regional Sewer System and Retail Sewer Customers up to the point of connection to the Detroit Local Sewer Facilities[.]

Accordingly, the lease provided that,

> [b]y virtue of this Lease, the Authority acquires, succeeds to and assumes the exclusive right, responsibility and authority . . . to occupy, operate, control and use the Leased Sewer Facilities, including all lands, buildings, improvements, structures, easements, rights of access, fixtures, equipment, materials, furnishings, all other personal property and all other privileges and appurtenances comprising or pertaining to the Leased Sewer Facilities . . . .
>
> * * *
>
> [GLWA] agrees to operate the Leased Sewer Facilities for the purpose of furnishing sewer service to its customers . . . . In connection therewith, [GLWA] shall pay all costs of operating, using, repairing, maintaining, replacing, enlarging, extending, improving, financing and refinancing the Leased Sewer Facilities . . . . [GLWA] shall not cause or permit any waste, damage or injury to the Leased Sewer Facilities and shall keep the Leased Sewer Facilities in good condition and repair (reasonable

wear and tear, obsolescence and damage by act of God, fire or other causes beyond the control of [GLWA] excepted).

The lease also addressed other matters pertaining to GLWA's assumption of authority and responsibility over the leased portion of Detroit's system, including that GLWA "shall be solely responsible for any noncompliance by the Leased Sewer Facilities with any Applicable Laws," that GLWA must remedy damage or destruction to the leased facilities "by fire or other casualty," and that GLWA "shall be entitled to make such rehabilitation of and replacements and improvements to" the leased facilities that it deems "necessary." As to the non-leased portion of Detroit's system, the lease made clear that Detroit "shall have the right to continue to operate and retain employees to operate, maintain, repair and improve the Local Sewer System and the Detroit Local Sewer Facilities, including capital improvements and repairs thereto."

Thus, under the plain terms of the lease, the parties agreed that as of January 1, 2016, GLWA acquired, succeeded to, and assumed the exclusive right, responsibility, and authority to control and use the leased facilities—which essentially includes the entire regional sewer system, as compared to the local sewer system, which is still managed by Detroit and DWSD.

In support of their claim, the Dubin plaintiffs rely on law purporting to show that Detroit maintained responsibility for the assets notwithstanding the lease. They cited the definition of an appropriate governmental agency under MCL 691.1416(b) and noted that Detroit met that definition. However, merely meeting a definition does not *ipso facto* establish that, at the time of the event at issue, Detroit had the legal authority to take steps to repair, correct, or remedy any defect in any sewer system that was under GLWA's control. See MCL 691.1417(3)(d).

The Dubin plaintiffs nevertheless contend that Detroit could be held liable for GLWA's defects under the decision in *Foster v Cone-Blanchard Machine Co*, 460 Mich 696; 597 NW2d 506 (1999). We find *Foster* inapplicable in this case. *Foster* dealt with the liability of a successor entity for a product that had been designed by a predecessor in interest; it did not involve real property leased to another party and under that party's exclusive control, and it involved exclusively private entities. See *id*. We likewise reject defendants' reliance on *Bosanic v Motz Dev, Inc*, 277 Mich App 277, 285-286; 745 NW2d 513 (2007). *Bosanic* is inapplicable to the instant matter. The plaintiffs in *Bosanic* were attempting to hold a drain commissioner responsible under MCL 691.1417. Those facts are distinct, and we fail to see how *Bosanic* is meaningfully relevant to the matter at hand.

When it resolved this issue in favor of Detroit, the trial court analyzed the explicit language of the lease and the mandates of MCL 691.1417(3)(d). It ultimately concluded that Detroit had no legal authority to take reasonable steps to repair or remedy any potential defects. The court reasoned, in relevant part:

> Under the facts before it, the Court cannot envision a situation under the Regional Sewage Disposal System Lease in which Detroit possessed the "legal authority" to perform repairs, make alterations or improvements, or otherwise remedy the alleged defects of the pump stations. Indeed, the Regional Sewage Disposal System Lease provides that the Authority will perform these roles.

The Dubin plaintiffs maintain that Detroit certainly had authority to remedy defects over the decades preceding the lease with GLWA and that, even after the lease, Detroit still retained ownership of the leased property. The Dubin plaintiffs have failed to meaningfully explain how, given the plain terms of the lease, either Detroit's prior authority or its continued ownership would be enough to create a genuine factual dispute that, "at the time of the event" at issue, Detroit had the legal authority to take steps to repair, correct, or remedy any defect in the portion of the sewer system that was under GLWA's control. See MCL 691.1417(3). Nor have the Dubin plaintiffs explained how, given the plain terms of lease, further discovery on the question might be warranted or necessary to properly resolve this question. Accordingly, we do not see grounds to reverse the trial court on this issue.

The Dubin plaintiffs, however, additionally argue that summary disposition was premature because the trial court improperly disposed of their argument that Detroit remained responsible for defects in the local sewer system. These defects, the Dubin plaintiffs argue, could have contributed to the June 2021 sewer backups. In support of this argument, the Dubin plaintiffs presented a report on the overall state of the combined sewer system (CSS) managed by Detroit and GLWA. The report was published after a major rain event caused sewer backups in July 2016, largely in the same areas affected by the June 2021 rain event at issue in the instant matter. The report indicated that the peak flow capacity of stormwater inlets in the local system was greater than the capacity of Detroit's CSS, and advised that certain improvements be made to reduce the likelihood of future sewer backups, including the installation of vortex valves to manage the flow of stormwater into the sewer system and backwater valves on residential sewer lines to prevent excess water from backing up into residential basements.

Detroit presented no evidence that either suggestion had ever been implemented, instead relying on an affidavit from DWSD chief operating officer Sam Smalley, who averred that the system is designed only to handle a 10-year, 1-hour storm and that "[t]he amount of inflow that can enter the system is regulated by restrictive grates that cover the inlets." In response to the latter statement, the Dubin plaintiffs submitted an affidavit from Jacob Kane, an employee of Dubin Law, PLLC, and a lengthy series of photographs depicting the sewer grates in the Jefferson Chalmers and Cornerstone Village neighborhoods of Detroit. The inlet grates shown in the photographs are in various states of disrepair, with many covered by dirt and debris. The grates depicted in the photographs appear to prevent little to no stormwater inflow, according to the Dubin plaintiffs.

In response to the Dubin plaintiffs' argument, the trial court stated:

While Plaintiffs' argument raises serious operational and policy questions, this is not the standard. In reviewing this case and the related files, the Court has many questions. Again, this is not the standard. To proceed with this suit, Plaintiffs must establish an exception to governmental immunity under the GTLA. MCL 691.1417. To do so, Plaintiff[s] must establish a known defect with Detroit's system. *id*. This case is factually distinguishable from *Sinclair* [*v Grosse Pointe Farms*, unpublished per curiam opinion of the Court of Appeals, issued June 4, 2015 (Docket Nos. 319317, 319368, 319318, 319370, 319319, 319371)] and the holding is not controlling nor does it establish a defect in this case. Plaintiffs failed to establish a known system defect as required by the SDSE. MCL 691.1417.

-25-

On appeal, Detroit likewise argues that the improvements suggested in the report regarding the 2016 event do not support the argument that a defect existed in the system. But viewing the evidence in the light most favorable to the Dubin plaintiffs, the fact remains that Detroit was advised that improvements were necessary to prevent future sewer backups and apparently made no effort to make those improvements. At minimum, this suggests that defects in the system as it was designed, and as it existed in 2016, did potentially contribute to the sewer backups that later occurred in June 2021. See MCL 691.1416(e).

As was the case with GLWA's motion, the Dubin plaintiffs argue that Detroit's motion for summary disposition was premature because the Dubin plaintiffs had not yet had an opportunity to conduct discovery. As to the leased portion of Detroit's system, we disagree, but as to the non-leased portion of Detroit's system, we agree. For the foregoing reasons, the trial court erred by dismissing the Dubin plaintiffs' claims against Detroit with regard to defects in Detroit's local system, but did not err by dismissing their claims against Detroit with regard to the portion of Detroit's system leased to GLWA.

## III. THE JOHNSON PLAINTIFFS' APPEAL

In the remaining dockets, the Johnson plaintiffs argue that the trial court erred when it granted the motions for summary disposition by the various defendants. Specifically, they contend that the trial court erred by dismissing their inverse-condemnation claims against all defendants, the claims premised on gross negligence against John Does 1 through 10, and the claims under MCL 691.1417(3) against all defendants.[11] We will address each claim in turn.

## A. INVERSE CONDEMNATION

The Johnson plaintiffs first argue that the trial court erred by dismissing their inverse-condemnation claims. We disagree.

The trial court rejected the contention that governmental immunity applied to a claim for inverse condemnation and denied the motions for summary disposition of the inverse-condemnation claims under MCR 2.116(C)(7). The trial court, however, agreed that defendants were entitled to summary disposition of those claims under MCR 2.116(C)(8) (failure to state a claim) because the Johnson plaintiffs did not establish that the governmental agencies' actions were a substantial cause of a decline in property value or that the governmental agencies took affirmative actions directly aimed at the Johnson plaintiffs' properties. We agree that MCR 2.116(C)(7) did not apply to the inverse condemnation claim. To allow the government to assert governmental immunity as a defense to an uncompensated taking "would be utterly to vitiate the constitutional provision providing for just compensation for the taking of private property for public use . . . ." *Krieger v Dep't of Environment, Great Lakes, and Energy*, 348 Mich App 156, 172; 17 NW3d 700 (2023) (quotation marks and citation omitted). Thus, a challenge to the

---

[11] The Johnson plaintiffs have not appealed the trial court's decision to dismiss their trespass-nuisance claims and their request for injunctive relief.

sufficiency of the allegations establishing a claim for inverse condemnation is a challenge under MCR 2.116(C)(8), not MCR 2.116(C)(7). *Id.*

A motion under MCR 2.116(C)(8) tests the legal sufficiency of the allegations in a complaint. *Maiden*, 461 Mich at 119. A reviewing court must accept all well-pleaded factual allegations as true and must construe them in the light most favorable to the nonmoving party. *Id.* A court should grant a motion under MCR 2.116(C)(8) only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. *Id.* Review under MCR 2.116(C)(8) is limited to review of the pleadings alone. *Id.* at 119-120.

The Michigan Constitution prohibits the taking of private property for "public use without just compensation." Const 1963, art 10, § 2. To ensure the protections of Const 1963, art 10, § 2, Michigan "recognizes a cause of action, often referred to as an inverse or reverse condemnation suit, for a de facto taking when the state fails to utilize the appropriate legal mechanisms to condemn property for public use." *Peterman v Dep't of Nat Resources*, 446 Mich 177, 187-188; 521 NW2d 499 (1994). It is not necessary to prove that the government physically intruded onto the plaintiff's property to establish a claim for inverse condemnation; rather, a claim will lie if the government takes an action that effects a partial destruction or diminution of the value of property. See *id.* at 189-190.

A claim for inverse condemnation may be premised on a physical taking or a regulatory taking. *Gym 24/7 Fitness, LLC v Michigan*, 341 Mich App 238, 260-261; 989 NW2d 844 (2022). A physical taking involves the seizure or physical occupation of private property by the government, requiring just compensation. *Id.* at 262. A regulatory taking occurs when the government imposes regulations that deprive a property owner of the beneficial use of his or her property. *Id.* at 262-263. Either taking may be temporary or permanent. *Id.* at 263. This case concerns a physical taking, as the Johnson plaintiffs allege that they suffered a temporary physical invasion of their respective properties, which caused damage to both real and personal property.

This Court recently restated the law applicable to establishing a claim for inverse condemnation:

> There is no precise formula for determining when a taking has occurred; however, a "taking" is not narrowly construed, nor does it require an actual physical invasion of the property. Pertinent factors include whether the governmental entity abused its exercise of legitimate eminent domain power to plaintiff's detriment. When considering whether a de facto taking has occurred, we must consider the form, intensity, and the deliberateness of the government actions in the aggregate. In most cases alleging inverse condemnation, the plaintiff is required to establish two things: (1) that the government's actions were a substantial cause of the decline of the property's value and (2) that the government abused its powers in affirmative actions directly aimed at the property. There must also be a causal connection between the damages claimed by the plaintiff and the actions of the government. [*Jackson v Southfield Neighborhood Revitalization Initiative*, 348 Mich App 317, 367-368; 18 NW3d 27 (2023), rev'd in part on other grounds ___ Mich ___; ___ NW3d ___ (2025) (Docket No. 166320) (quotation marks, citations, and alteration omitted).]

-27-

Additionally, a plaintiff must be able to show that he or she suffered a unique or special injury. The injury must be different in kind—not simply in degree—from the harm suffered by all persons similarly situated. *Mays v Governor of Mich*, 506 Mich 157, 174; 954 NW2d 139 (2020).

The trial court determined that dismissal of the inverse-condemnation claim was appropriate in part because the Johnson plaintiffs could not "establish that Defendants, through their actions or inactions, substantially caused the diminution of property values for the Plaintiffs." The court found that although the Johnson plaintiffs suffered financial and other types of loss, "[n]othing in the record establishe[d] that Defendants substantially caused the required decline of property values." The trial court likewise determined that summary disposition was appropriate under MCR 2.116(C)(8) because the Johnson plaintiffs did not establish the second element of their inverse-condemnation claim. The trial court is correct that summary disposition under MCR 2.116(C)(8) is warranted on this claim. Plaintiffs' allegations, when taken as true, fail to provide viable grounds to conclude that any defendant "abused its powers in affirmative actions directly aimed at [the Johnson plaintiffs'] properties." *Jackson*, 348 Mich App at 368 (quotation marks and citation omitted).

As the Johnson plaintiffs state in their brief on appeal, their theory of inverse condemnation is as follows: "by failing to remedy known defects and adequately maintain the sewer system, Defendants created a situation where Plaintiffs['] properties would inevitably have to house the flood waters that Defendants failed to pump as the rains fell." Such allegations, however, sound in the sort of "inaction and omissions" that this Court has deemed inadequate to meet the "affirmative actions" requirement of an inverse-condemnation claim. *Attorney General v Ankersen*, 148 Mich App 524, 562; 385 NW2d 550 (1986); see also, e.g., *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 296; 769 NW2d 234 (2009); *Hinojosa v Dep't of Natural Resources*, 263 Mich App 537, 549-550; 688 NW2d 550 (2004).

In arguing otherwise, plaintiffs stress this Court's decision in *Krieger*, which in turn relied heavily on our Supreme Court's decision in *Mays*. Both of those cases, however, involved allegations of affirmative decisions and actions by the defendants to specifically direct known harms against the plaintiffs, as well as active efforts by the defendants to conceal or misrepresent those harms. See *Mays*, 506 Mich at 175 (explaining that the plaintiffs satisfied this element by alleging that the state defendants authorized the use of the Flint River as a water source despite knowing it could cause property damage, and that they concealed data and misrepresented the water's safety to downplay the risks); *Krieger*, 348 Mich App at 185-188 (detailing how the "plaintiffs' allegations show[ed] active steps by defendants to authorize higher lake levels" by blocking dam repairs, threatening enforcement if water was lowered, and concealing key information about the dam's risk to nearby properties). The allegations in this case are not comparable, and neither *Mays* nor *Krieger* suggest that they are legally sufficient to sustain plaintiffs' claim. Accordingly, plaintiffs have failed to state a viable claim of inverse condemnation. Plaintiffs likewise have not offered anything to suggest that an amendment to the allegations would cure this deficiency. We thus affirm the trial court's dismissal of plaintiffs' inverse-condemnation claim.

## B. JOHN DOES 1 THROUGH 10

On appeal, the Johnson plaintiffs do not contest the trial court's decision to dismiss their claims against the governmental entities premised on the gross negligence of John Does 1 through 10. They instead argue that the trial court erred when it dismissed their claims against John Does 1 through 10 in their individual capacities. We agree.

A party may move for "dismissal of or judgment on all or part of a claim" under MCR 2.116. See MCR 2.116(B). The moving party may assert as a ground for dismissal that he or she has "immunity granted by law." MCR 2.116(C)(7).

When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. [*Dextrom*, 287 Mich App at 428-429.] When there is a question of fact as to whether the employees have immunity, the dispute must be resolved by the finder of fact. See *Guider v Smith*, 431 Mich 559, 572; 431 NW2d 810 (1988).

Officers and employees of a government agency are "immune from tort liability for an injury to a person or damage to property caused by" the officer or employee "while in the course of employment or service" if the officer or employee "reasonably believ[ed] he or she [was] acting within the scope of his or her authority," the "governmental agency [was] engaged in the exercise or discharge of a governmental function," and the officer's or employee's "conduct [did] not amount to gross negligence that [was] the proximate cause of the injury or damage." MCL 691.1407(2). John Does 1 through 10 had the initial burden to raise and demonstrate that they had the immunity provided under MCL 691.1407(2). See *Ray*, 501 Mich at 62.

In its motion for summary disposition, GLWA argued that the trial court had to dismiss the claims premised on the gross negligence of John Does 1 through 10 because MCL 691.1417(3) provided the exclusive remedy for all claims under any legal theory to recover for injuries caused by a sewer disposal event. It also argued that it could not be held liable for its employees' negligent conduct. GLWA argued generally that the rain was the cause of the injuries at issue as to the claims under MCL 691.1417(3), but did not directly argue that John Does 1 through 10 could not be the proximate or factual cause of the injuries at issue.

GLWA continues to argue on appeal that the Legislature effectively eliminated personal liability for injuries related to sewer disposal system events under MCL 691.1417(2). The statute provides:

> A governmental agency is immune from tort liability for the overflow or backup of a sewage disposal system unless the overflow or backup is a sewage disposal system event and the governmental agency is an appropriate governmental agency. Sections 16 to 19 abrogate common law exceptions, if any, to immunity for the overflow or backup of a sewage disposal system and provide the sole remedy

-29-

> for obtaining any form of relief for damages or physical injuries caused by a sewage disposal system event regardless of the legal theory. [MCL 691.1417(2).]

A careful reading of the statute shows that it applies only to governmental agencies. The Legislature introduced its statement about the abrogation of the common law "exceptions . . . to immunity" by stating that a "governmental agency is immune from tort liability for the overflow or backup of a sewage disposal system." MCL 691.1417(2). This language strongly suggests that the second sentence refers to the common-law exceptions that applied to governmental agencies for overflows and backups of sewers before the enactment of MCL 691.1416 through MCL 691.1419. The reference to other sections in the second sentence also bolsters that understanding. None of those sections refer to government employees or other government personnel. By contrast, the other sections repeatedly refer to a governmental agency. See MCL 691.1417(1); MCL 691.1417(3); MCL 691.1418; MCL 691.1419. Read together, the proper interpretation is that the Legislature abrogated only the common-law exceptions to governmental immunity for sewer backups that previously applied to governmental agencies. See *GC Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421; 662 NW2d 710 (2003). Therefore, the trial court did not err when it declined to dismiss the claims against John Does 1 through 10 on that basis.

As alleged in the Johnson plaintiffs' complaints, John Does 1 through 10 were plainly engaged in the exercise or discharge of a governmental function when acting to operate, maintain, and manage GLWA's infrastructure. See MCL 691.1401(b). Accordingly, they would be immune from liability for their acts or omissions unless their acts or omissions amounted to "gross negligence that [was] the proximate cause of the injury or damage." MCL 691.1407(2).

The trial court focused on whether John Does 1 through 10 were the factual and proximate cause of the injuries. Because the Legislature stated in MCL 691.1407(2)(c) that the governmental employee's conduct must not amount to gross negligence that is "the" proximate cause of the injury or damage, the Legislature must have intended to immunize governmental employees unless their acts or omissions amount to "the one most immediate, efficient, and direct cause" of the injury or damage at issue. *Robinson*, 462 Mich at 462. The trial court determined that, on the record before it, John Does 1 through 10 could not be the factual cause of the injuries sustained by the Johnson plaintiffs. More specifically, it determined that they could not be the factual and thus proximate cause because the excessive rainfall was the factual and proximate cause of the sewer backups.

In their complaint, the Johnson plaintiffs alleged that John Does 1 through 10 had a duty to monitor GLWA's operating systems to ensure that the pumping stations remained fully operational. They further alleged that they should have brought the pumping stations to full operational capacity once they knew about the oncoming rain. They alleged that John Does 1 through 10 willfully disregarded or failed to address various issues and that the failures amounted to gross negligence that caused the Johnson plaintiffs to suffer damages.

In dismissing the Johnson plaintiffs' gross-negligence claims on the basis of causation, the trial court erred for similar reasons to those already discussed with regard to the Dubin plaintiffs' claims. The record indicates that the Johnson plaintiffs did not have a reasonable opportunity to conduct discovery with regard to their claims against John Does 1 through 10 and whether their alleged failure to respond properly to the rain event was a factual cause of the damage at issue,

such as whether one or more of the Johnson plaintiffs' homes would have suffered the sewer backups they did but for that failure. Accordingly, summary disposition was premature. See *Oliver*, 269 Mich App at 567.

## C. DISMISSAL UNDER MCL 691.1417(3)

Finally, the Johnson plaintiffs argue that the trial court erred when it dismissed their claims under MCL 691.1417(3) against all of the named defendants. We agree in part and disagree in part.

### 1. DETROIT AND DWSD

Detroit and DWSD moved to dismiss the Johnson plaintiffs' claims under MCL 691.1417(3). They argued that the Johnson plaintiffs failed to identify any defect in the system about which they knew or should have known and that they were not responsible for defects in the sewer system that had been leased to GLWA. Here, the Johnson plaintiffs failed to present evidence establishing a question of fact as to whether Detroit or DWSD knew or should have known about a specific defect for which it might be liable under MCL 691.1417(3). The Johnson plaintiffs merely asserted that Detroit and DWSD were appropriate governmental agencies under the definition of that phrase provided under MCL 691.1416(b) because Detroit still owned the assets at issue within GLWA's system and discharged wastewater into the regional system. Like the Dubin plaintiffs, they then argued that Detroit and DWSD remained liable for the property that it leased to GLWA because Detroit could not contract away its authority. As noted in the discussion of the Dubin plaintiffs' similar arguments above, we believe that the court's rejection of such arguments was correct. Summary disposition as to Detroit and DWSD with regard to the Johnson plaintiffs' claims was therefore appropriate.[12]

### 2. GLWA

GLWA moved for summary disposition of the Johnson plaintiffs' claims for the same reasons that it asserted against the Dubin plaintiffs and supported its motion with the same evidence. More specifically, it stated that its system was reasonably designed to handle a 10-year, 1-hour storm and that a lack of capacity to handle a larger storm was not actionable. It then argued that rainfall in excess of the amount that its system was reasonably designed to handle was the cause in fact and the proximate cause of the sewer backups without regard to whether its system had defects.

In response, the Johnson plaintiffs did not present any evidence that, had GLWA rectified the defects in its system, one or more of the Johnson plaintiffs' properties would not have experienced a sewer backup. However, as was the case with the Dubin plaintiffs, it is clear from the record that the Johnson plaintiffs did not have an adequate opportunity to conduct discovery on this issue. The Johnson plaintiffs identified reports that suggested that there was evidence that one or more defects in GLWA's system may have exacerbated the flooding problem. With further

---

[12] Unlike the Dubin plaintiffs, the Johnson plaintiffs raise no separate argument regarding defects in Detroit's local sewer system.

discovery, the Johnson plaintiffs might be able to gather support for their position on causation. As such, summary disposition of their claims against GLWA was premature. See *Oliver*, 269 Mich App at 567.

## 3. GROSSE POINTE AND GROSSE POINTE PARK

Grosse Pointe and Grosse Pointe Park concurred in the motions for summary disposition of the Johnson Plaintiffs' claims by Detroit and GLWA, but they also asserted an independent basis for granting summary disposition. Specifically, they asserted that the Johnson plaintiffs failed to allege that there were any defects that Grosse Pointe and Grosse Pointe Park had the legal authority to repair, correct, or remedy, which they failed to repair, correct, or remedy. They claimed that the Johnson plaintiffs only identified defects in GLWA's system and then asserted that Grosse Pointe and Grosse Pointe Park could be liable for relying on GLWA's system. Grosse Pointe and Grosse Pointe Park asserted that these allegations, as pleaded, were insufficient to state a claim against them.

It was an essential element of the Johnson plaintiffs' claims under MCL 691.1417(3) that they plead and be able to prove that Grosse Pointe and Grosse Pointe Park knew or should have known about a defect and, having the legal authority to do so, failed to take reasonable steps within a reasonable time to repair, correct, or remedy that defect. It was undisputed that Grosse Pointe and Grosse Pointe Park had no legal authority to do anything with GLWA's system. Accordingly, the Johnson plaintiffs could not rely on defects in GLWA's system to satisfy that element. Yet, in their complaints involving Grosse Pointe and Grosse Pointe Park, unlike the case with the allegations in the Dubin plaintiffs' complaint, the Johnson plaintiffs only alleged that Grosse Pointe and Grosse Pointe Park should not have relied on the regional system for their sewerage. Those allegations, as pleaded, were insufficient to allege a claim under MCL 691.1417(3). However, we note that the trial court dismissed the Johnson plaintiffs' allegations against Grosse Pointe and Grosse Pointe Park solely on their failure to establish causation. Thus, the trial court never addressed the adequacy of the pleadings. Generally, when this Court finds that summary disposition is proper on grounds that were not considered by the trial court, the "plaintiff ought to have the opportunity to seek leave to amend the complaint in the trial court." *Jones v Bitner*, 300 Mich App 65, 78; 832 NW2d 426 (2013). Because the allegations may be curable by amendment, we reverse the dismissal of the Johnson plaintiffs' claims against Grosse Pointe and Grosse Pointe Park and remand to permit the Johnson plaintiffs an opportunity to move to amend the complaint.

## 4. GROSSE POINTE FARMS

Grosse Pointe Farms apparently concurred in GLWA's motion for summary disposition in the Johnson plaintiffs' cases. It did not, however, offer an alternate basis in support of summary disposition, as did Grosse Pointe and Grosse Pointe Park. As such, it did not establish an independent basis for dismissing the claims of the Johnson plaintiffs' claims under MCL 691.1417(3). For the reasons applicable to the analysis involving the Johnson plaintiffs' claims against GLWA under that statute, summary disposition was premature. As such, we reverse the trial court's decision to dismiss the Johnson plaintiffs' claims under MCL 691.1417(3) against Grosse Pointe Farms.

## IV. CONCLUSION

In Docket No. 365363, we reverse the trial court to the extent that it concluded that the Dubin plaintiffs waived class certification. For all the reasons stated herein, we affirm the trial court's dismissal of the Dubin plaintiffs' claims against Detroit with respect to the portions of Detroit's system leased to GLWA, but otherwise reverse the trial court's decision to dismiss the claims under MCL 691.1417(3) by the Dubin plaintiffs against all defendants.

In the remaining dockets, we affirm the trial court's dismissal of the Johnson plaintiffs' inverse-condemnation claim under MCR 2.116(C)(8) and its dismissal of the Johnson plaintiffs' claims under MCL 691.1417(3) against Detroit and DWSD. We likewise reverse the trial court's dismissal of the Johnson plaintiffs' claims under MCL 691.1417(3) against Grosse Pointe and Grosse Pointe Park, and remand to afford the Johnson plaintiffs an opportunity to move to amend the complaint as to these parties. We also reverse the trial court's decision to dismiss the Johnson plaintiffs' claims under MCL 691.1417(3) against GLWA and Grosse Pointe Farms, and the dismissal of their claims against John Does 1 through 10.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Michelle M. Rick
/s/ Philip P. Mariani